## HOGAN & CO. v. REYNOLDS.

1. It is irregular to permit a witness to give evidence of the general law merchant.
2. It is not improper to permit the parties to ask a witness, whether he intended to convey to the jury a specified impression, by what he had previously stated.
3. A witness having stated, that one of the firm sued had borrowed a sum of money from a third person, of which a part had been paid from the firm effects since its dissolution, also stated, that he thought the note of the firm was given for the money so borrowed, but was not certain whether it was the note of the firm sued on, or the note of another firm, of which the same partner was a member; under these circumstances the evidence is admissible, although the note is not produced, or its absence accounted for.
4. A receipt in these terms, to wit: "Received of W. R. one of the executors of W. W. two notes of hand on W. G. & J. McN. amounting te $1750, due 1st January, 1838, which we are to collect, or return the same to said R.

with interest from the time it was due," is open to explanation by parol evidence, so as to show whether the words *with interest*, &c. was intended to refer to the return of the money, by the signers, or to the amount which was to be collected from the notes.

5. The receipt being signed by a firm, and the question being, whether all the members were bound, or only the one signing it, in the absence of all explanatory evidence, the Court should give it the construction which will operate most strongly against those purporting to be bound by it.

6. It is not within the ordinary scope of a partnership created for the mere purpose of buying and selling merchandize, to receive and undertake to collect notes.

7. If there is a distinction, as to the capacity of one partner to bind the firm, between the borrowing of money and notes, it does not apply when the borrowed note is taken for the purpose of receiving money upon it, and the money is actually received.

8. If a partner has converted the money of another to his own use, and afterwards appropriates the same sum to the purposes of the firm, the firm does not thereby become a debtor to the person whose money has been converted; but if one partner, in the firm name, but without the authority of his partners, obtains money and applies it to the use of the firm, the firm is liable the instant the appropriation is so made, although it would not be in the absence of such appropriation, because of the defect of authority.

Error to the County Court of Talladega.

Assumpsit by Reynolds, against Hogan, Hardin & Tompkins, as partners of a mercantile firm, doing business under the name of James A. Hogan & Co. The declaration, besides the general counts, contains several in which the liability of the defendants is charged to arise from a written instrument, in these terms:

"March 12th, 1838. Received of Walker Reynolds, one of the executors of the estate of William Wilson, dec'd, two notes of hand, on William Graham and John McNeil, amounting to seventeen hundred and fifty dollars, due the 1st day of January, 1838, which we are to collect, or return the same to said Reynolds, with interest from the time it was due.

JAS. A. HOGAN & Co."

Harden and Tompkins pleaded the general issue, and denied, by affidavit, the execution of the instrument described in the special counts, and therein alledged to be made by them, as well as by their co-defendant.

At the trial, the plaintiff gave in evidence, articles of co-partner-

ship between all the defendants, executed in May, 1837. These articles recite, that the partnership was to be considered as formed the 1st April, 1836, and continue five years. Hogan put in $2,010 25, in goods on hand, besides certain real estate. Tompkins was to put in $5,000, $2,010 25 of which had been previously put in by one R. H. Carr, into the firm, and the remainder in money. Harden was to put in $5,000, in money. The business was to be carried on by Hogan, under the name of James A. Hogan & Co., and the profits of the business of Hogan, Simms & Kerr, was to go to the benefit of the business of Hogan & Co.

The firm could be dissolved and its business controlled by a majority of the partners. He also gave in evidence, the instrument in writing before set out, and proved that the makers of the notes therein mentioned were perfectly good, and that they were paid as soon as presented. It was also in evidence, that the firm of Hogan & Co. was a mercantile firm, of an ordinary character, in which Hogan was the active partner, and the other defendants were silent members. The firm was shown to have been dissolved in February, 1839, and its affairs committed to a trustee, named by them, for settlement.

The plaintiff offered evidence, showing that Hogan had obtained a note from one Sawyer, which called for $1,000, due from one Jenkins. Hogan had collected the money on it, and the witness who spoke of this transaction, thought the note was obtained on the firm account, but was not certain whether it was Hogan & Co. or Hogan, Carr & Co. Hogan stated at the time he procured this note, that the firm owed Jenkins, and it would answer the purpose of money. Hogan afterwards paid the witness the amount of the note then borrowed, partly in a claim the firm held against the witness, but there was no proof that this arrangement was known to the other defendants, or to the plaintiff.

The plaintiff then asked a witness, who was a merchant, whether it was within the custom of merchants, under the law merchant, for any member of a firm to borrow money in the firm name. The same question was asked of another merchant, and permitted in both witnesses to be answered in the affirmative, notwithstanding an objection by the defendants; who thereupon excepted.

The plaintiff called a witness, who stated that he had a con-

versation with defendant, Harden, whom he asked why he let
Reynolds sue him. Harden replied, Reynolds had a right to
sue him, he supposed, that the firm owed him money. Witness
then said to Harden—but Reynolds says you promised to pay
him the money. Harden replied—Reynolds told me he held the
note of the firm for money, but when I came to see it, it was a
receipt for the collection of notes—not a mercantile transaction,
and without the scope of the partnership. The defendants then
asked a witness, if Hogan could have borrowed this amount of
money on his own responsibility. The witness replied, he could,
from some persons. The plaintiff then asked the witness, if he
desired to be understood as saying, that Hogan could have bor-
rowed the money from Reynolds. To this question the defend-
ant objected, but the Court permitted the witness to answer ; and
he then said he thought not. The defendants excepted to this.

The defendants proved that the firm had a cash capital, at its
formation, of $12,000, which, with prudent management, was
sufficient to sustain the business without borrowing. The same
witness proved that collections were deferred in the fall and win-
ter of 1838-9. The plaintiff then proved that Hogan had bor-
rowed $2,000 in cash of one Ball ; that a part of the money, since
the dissolution of the firm, had been paid out of the firm effects, by
the consent of the partners. To all this about borrowing money,
the defendants objected and excepted.

The witness then stated that he thought Hogan gave Ball the
note of the firm of James A. Hogan & Co., but was not certain
whether it was that or the note of Hogan, Carr & Co. The
defendant objected to the witness speaking of the note, until its
absence was first accounted for, but the Court admitted the evi-
dence ; to which the defendant excepted. The defendants then
proved, that in August or September, 1838, a dissolution of the
firm was proposed, and preparatory thereto, Hogan made out a
statement of what he said were the firm liabilities and assets.
The witness then before the Court, produced a paper, which he
said was that statement, and the defendants asked if the debt
now sued for, was included in that statement. The plaintiff ob-
jected to this question, and to all evidence in relation to that pa-
per. The Court sustained the objection, and the defendants ex-
cepted.

The witness then stated, that he was the clerk of Hogan & Co.

and familiar with their books, and that no writing within his knowledge had ever been made concerning the notes mentioned in the receipt, or their proceeds.

It was further proved, that the notes named in the receipt were collected, and their proceeds applied under Hogan's direction. Some seven or eight hundred dollars were shown to have been appropriated to the firm liabilities, and as to the remainder there was no proof as to its application ; nor was there any proof that either of the other defendants knew of its appropriation to firm purposes, or of their consent that it should be so applied, save such inferences as may be drawn from the facts previously stated ; nor was there any proof of objection by them, to the appropriation, further than the facts previously set out.   The defendants then offered to prove, by a witness, that in a conversation had with Hogan, in reference to the subject matter of the suit, Hogan told the witness, that if the firm would not take the money he would, and buy negroes, whose increase would be worth more than the interest of the money.   The plaintiff objected, and the Court excluded the evidence ; to which the defendants also excepted.

This being substantially all the evidence before the jury, the defendants requested the Court to charge the jury—

1. That the plaintiff having produced the special contract, to wit, the receipt, he must recover on that receipt, or not at all.

2. That if they should believe that the receipt sued on was given without the scope of the ordinary dealings of the firm of Hogan & Co., Harden and Tompkins were not bound by it.

3. That should they believe, the firm of Hogan & Co. was a mercantile firm, engaged in the ordinary business of buying and selling merchandize, and not in the habit of giving receipts for notes for collection, then Harden and Tompkins were not bound by the receipt, unless they gave their assent to it, or in some way ratified the act.

4. That to entitle the plaintiff to recover for money collected on the notes mentioned in the receipt, (if any was collected,) and if the jury should find that the receipt was given without the scope of the ordinary patnership dealings, and that the giving it was not assented to, or sanctioned by Harden and Tompkins, the plaintiff must show that the money was used by, or came into the firm, by the consent, or with the knowledge of Harden and Tompkins.

5. That if any money was collected from the notes, the plaintiff in no event could recover, without proving a demand of the money before suit; and if the plaintiff had failed to prove a demand, the jury should find for Harden and Tompkins on the common counts.

6. That a partner of an ordinary mercantile firm has no authority to borrow notes on other individuals, and bind the firm for their collection, or return, without the acquiesence or consent of his partners ; nor does it alter the case, that the partner thus borrowing the notes, intended to use the funds arising from their collection for partnership purposes.

7. That if they should be satisfied the receipt exhibited was given without the scope of the partnership dealings, and that Harden and Tompkins never ratified the act, either directly or indirectly, then the plaintiff is not entitled to recover against them, for any money brought into the concern as the proceeds of the notes, or applied to the payment of firm debts, without their knowledge or consent.

8. If they should find that Hogan was the active partner of the concern, that did not autherize him to bind the firm, upon contracts unconnected with the business of the firm.

9. If they should believe that Harden, under the representation of the plaintiff, that he held the note of the firm of Hogan & Co., promised to pay it, this would not render the firm liable upon the receipt exhibited.

Each of these charges as asked was refused, and the jury was charged in these terms :

" A receipt by a partner of a mercantile firm, the legal import of which is to collect money on notes, is without the scope of the partnership dealings; and if the jury, after taking all the evidence should find, that this is a receipt solely, and only for collecting money on notes, then they should find for defendants.   But, should the jury, from the force of evidence, as they can and may, believe, that the receipt contains such language and such terms as will imply a borrowing on the part of Hogan, from Reynolds, of money, and that the proceeds were realized from the notes, and applied to purposes of the partnership, then the receipt does come within that provision of law which says, that one partner may bind the firm, in all matters growing out of, or having reference to the business thereof.   The receipt, embracing a promise to pay

Hogan & Co. v. Reynolds.

interest, may be regarded by the jury, not so much a receipt for the collection of notes, as an arrangement to borrow money, as it is not usual for officers of the law, or collecting agents to pay interest, and the law will not compel them to do so, until after a demand and refusal.

"If the jury believe the arrangement was made by Hogan, to borrow money, and was not made by him in his individual capacity, and applied to his individual use, then they should find for the plaintiff.

If Hogan gave the instrument sued on, and a part of the money was applied to the debts due by the partnership, the firm is bound for the whole.

The receipt is not like the iron bed of Procrustes—it is the foundation of the action, and must be taken in connection with the other evidence in the cause; and the jury ought to consider any evidence going to show, that money was received on the notes, by Hogan, and applied to the business of the firm. That parol evidence is not admissible to vary a written instrument, but the jury will give weight to any thing which tends to substantiate it."

The refusal to give the several charges requested, and that given, were excepted to, by the defendants, and are now assigned as error, as is also the several rulings of the Court, upon the matters of evidence excepted to at the trial.

W. P. Chilton, White, and S. F; Rice, for the plaintiffs in error, contended—

1. That it was error to allow witnesses to give evidence of the law merchant.

2. It was irregular to permit the witness to give his *opinion* with reference to the fact, that Reynolds would not have lent money to Hogan individually.

3. The allowing a witness to speak of a transaction in which a note was given for borrowed money, without the production of the note, is in direct opposition to a well known rule of evidence; and in the particular instance referred to, if the paper had been produced, it might have shown the entire statement to have no connection with the suit.

4. The principal question is, whether the firm is bound by Hogan's undertaking to collect or return notes. Such acts are

not within the ordinary business of commercial partnership, and therefore the firm is not bound. [Story on Part. 165, 169, 173, 175, 221, 225; Catlin, Peoples & Co. v. Gilder's Ex. 3 Ala. Rep. 536.]

5. Nor does the fact that money thus raised without authority, is carried into the firm, make the other parties responsible. [Whitaker v. Brown, 16 Wend. 505; 8 N. Hamp. 363; 21 Wend. 365.]

6. The borrowing of notes cannot be regarded in the same light as the borrowing of money, for the reason, that there is necessarily some limit to the power to borrow. Such an act is not usual, and therefore the power to do it ought not to be inferred. [Cook v. Branch Bank at Mobile, 3 Ala. Rep. 178; Mauldin v. same, ib. 502; Fisher v. Campbell, 9 Porter, 216.] It would not be contended, that land, slaves, &c., could be borrowed, so as to bind the partnership, and it is difficult to define the distinction between such acts and this.

PECK, contra, insisted there was no error in the several points ruled at the trial.

1. It was irrelevant, perhaps, to ask any witness what the law merchant was, but certainly a correct exposition of it ought not to reverse a judgment.

2. It is a mistake to suppose that witness gave his opinion upon the probability of Reynolds trusting Hogan alone. He was merely asked if he wished to convey a particular impression to the jury, and very properly was permitted to answer, that he did not.

3. It was impossible for the witness, or for the plaintiff to produce the note given by Hogan, for borrowed money to another person. The inference clearly is, that it had been paid and cancelled; however it may be, it is not within the reason of the rule, or indeed of its letter.

4. The receipt is capable of no other construction, than that the money was to be loaned if collected. It is therefore within the general scope of the business of a mercantile firm. Collyer on Part. 103, 212, 219, Gow. 52, 53; Collyer, 215, note, 68; 1 Esp. 406.]

5. But one partner may not only bind the firm, in the ordinary acts connected with its business, but also by acts out of that

course, if done with reference to matters transacted by the firm. [Collyer, 237, 271; Gow, 76, 74; 1 Salk: 291.]

6. The appropriation of the money to firm purposes, makes the partnership responsible. [Gow, 57; 6 Conn. 497.]

7. The plaintiff was entitled to a charge, giving a construction to the receipt, and although some of the charges asked and refused, may be correct enough, as mere abstract propositions, they were properly refused, because not involved in the evidence before the jury. It is possible too, the charge given may contain propositions which are debateable, yet they could not, nor did, affect the merits, which are clearly with the plaintiff.

GOLDTHWAITE, J.—The investigation, severally, of each of the questions raised in this case, would swell our opinion to an undue length. We shall therefore limit ourselves to the decision of those points of evidence which were made at the trial, and the ascertainment of the rules by which, in our judgment, the cause ought to have been governed in the Court below.

1. It was doubtless irregular to permit any witness to give evidence of the general law merchant, and it is very possible, if the objection was made to the relevancy of such evidence, the exception would be of sufficient weight to reverse the judgment; but this point being one of no importance, as we consider the case, we decline any further expression upon it.

2. The next exception calls in question the propriety of permitting a witness to say, that his testimony was not intended to convey the impression to the jury, that he supposed the plaintiff would have lent the money to Hogan individually. We see no reason why such explanation should not have been given; the question asked of the witness was, whether Hogan, on his own responsibility, could have borrowed such a sum of money. The answer of the witness was, that he could, from some persons; and, as this was nothing more than the expression of his opinion, there was no impropriety in ascertaining if the plaintiff was intended to be included in his answer.

3. The only other exception to the evidence which is now insisted on, is, that which questions the right of the plaintiff to examine his witness, as to some money borrowed by Hogan, from one Ball, for which either the note of Hogan & Co. or of Hogan, Carr & Co. was given, because the note was not pro-

Hogan & Co. v. Reynolds.

duced or accounted for. The true rule with respect to this matter, is well stated in Cowan & Hill's notes, 1209, where it is said, " but even where the law calls for the writing as the best evidence of the transaction to which it pertains, certain things relating to the writing, or the matters evinced by it, may be proved, without producing it, though they involve the fact of its existence." Thus in an action for the purchase money of a note, sold by the plaintiff to the defendant, parol evidence of the sale may be given without producing the note, or accounting for its absence. [Lamb v. Maberly, 3 Monroe, 179.] So the existence of a deed for slaves, will not prevent parol evidence from being given, without its production, for the purpose of characterising the] possession which accompanied it. [Spears v. Wilson, 4 Cranch, 398; see also, Rex v. Ford, 1 Nev. & Mann. 776.]

It might also be said, in answer to this exception, that it was not affirmatively shown that the note existed, and that the ordinary presumptions were, that it was paid, and consequently cancelled, or destroyed, though we prefer our decision to rest on the general rule.

4. Having thus disposed of the preliminary questions of evidence, we shall consider the rules which must govern the cause on its merits. And, first, with respect to the effect of the receipt offered in evidence. We think undue weight is given to this, by both parties, for each seems to consider it conclusive of the case. In our judgment, it belongs to that class of writings which is open to explanation. We do not now speak of that explanation which all writings receive, from the circumstances surrounding, and attending their execution, or which arises out of the description of the parties to them; for we consider those matters as proper in all cases; and as such they are held, by elementary writers on the subject of evidence. [Philips on Ev. 543; Wigram on Ex. Ev. 59; Gresley's Eq. Ev. 201.] But we refer to that explanation, which may be given to terms of a doubtful, ambiguous, or double nature. That the notes described in the receipt, were to be collected, and that they might be returned, is very clear; but it is doubtful whether the last expression used—with interest from the time it was due—refers to the return of the money, by Hogan & Co., or to the amount which was to be collected from the notes of Graham and Mc-

Neil. It is upon the connection of this expression with the one or the other of these matters, that the *prima facie* force of the writing depends; for if those words refer to the payment of interest by Hogan & Co., it is difficult to resist the conclusion, that the parties contemplated a loan of the money, in the event of its collection; but if they refer merely to the amount to be, collected, then it is quite obvious they do not extend the meaning of what precedes them, and the receipt is one for collection only.

It would be strange indeed, if a writing of this description, which every one will admit to be so ambiguous, that it is difficult to determine what was really intended by it, should be incapable of explanation by extrinsic or parol evidence ; but the principle is well settled, that such evidence is admissible. Thus, if one promises to pay another a sum of money for counsel, it shall be intended to be for counsel in law, physic or otherwise, as the promisee may be of either of those, or other professions. [Powell on Con. 384.] So it has been held, where a bequest was made of a female slave and her *increase,* that extrinsic evidence was admissible, to explain and apply the term increase, to those already born, or those to be so in future. [Reno's Ex. v. Davis, 4 H. & M. 283.] The case of Cole v. Wendall, 8 John. 116, is very similar, in principle, to the one under consideration. There, one of the parties agreed to receive from the other, sixty shares of the stock of a certain bank, on which ten dollars per share had been paid, by the seller, and he was to receive his note for $667, from the purchaser, who was to pay the remainder in cash, and an advance of five per cent. It was held, that parol evidence of the agreement between the parties was admissible, to show, whether the term five per cent. advance, was applicable to the nominal amount of the shares, or the sum paid for them by the seller. These cases are entirely satisfactory, to show, that wherever language is used in a written instrument, which is capable of receiving two meanings, it is open to explanation, by parol or extrinsic evidence.

The terms made use of in this receipt, are not so clear as to authorize a Court to determine positively, and absolutely upon their meaning. We arrive thus at the conclusion, that this receipt may be explained, by extrinsic or parol evidence, so as to show what the parties intended by the doubtful terms.

5. But, however this instrument may be subject to explanation and control, by evidence *aliunde*, the question may arise as to its construction, in the event that no such evidence is given. It is a most salutary rule, and of as much force here as in any other case, that a written instrument is to be construed most strongly against the promissor ; and when he has made use of language of doubtful or double import, he will not be heard to complain, that it is taken in its strongest sense. So too, as the instrument is capable of two constructions, it should receive that which will bind all the firm, as it purports to do, instead of one which will bind a single partner only. Again, the rule is, that every part of an instrument shall receive such a construction, that none of it shall be rejected as insensible, if it is capable of meaning ; and this cannot be applied to the last phrase of the receipt, without construing it to mean an engagement by the firm, to pay interest upon the sum of $1,750, (if collected from Graham and McNeil,) from the time it was due from them.

6. If, however, the evidence before the jury, satisfied them, that the doubtful phrase in the receipt, referred merely to the collection of interest from Graham and McNeil, then the question would have arisen, how far the firm was bound by the act of Hogan. It certainly is not within the ordinary scope of a partnership, created for the mere purpose of buying and selling merchandize, to receive, and undertake to collect, notes on other persons ; though we are not unaware that it is extensively the practice for commercial firms, in one place, to send their demands to other firms, or houses, doing business near the residences of the debtors. How far the assent, or concurrence of all the members of the firm might be presumed, from the act or correspondence of one, in the name of the firm, is not here the question, and therefore calls for no consideration. Whatever the presumptions in such a case might be, it is evident they would not be the same where the party seeking the collection, resided in the same vicinage with the house to which these demands were committed, and when he possessed the same facilities for collecting them in person, or for transmitting them to others.

7. It is conceded that one partner may bind the firm, for money borrowed in the firm name ; but the power is denied to borrow notes on other individuals. We will not discuss this

Hogan & Co. v. Reynolds.

point further than to say, that if there is a distinction between the borrowing of money, and notes, it does not apply, when the borrowed note is taken for the purpose of receiving money upon it; and such is actually received. No one can suppose the giving a check upon a bank, or an order, or a draft upon a third person, is not a loan of money, when that is afterwards received; and we can perceive no reasonable distinction between these cases, and the transfer of a note, followed by a similar payment.

8. It is doubtless true, that if one partner has converted money to his own use, and he afterwards appropriates the same sum to the purposes of the firm, the latter does not thereby become a debtor to him whose money has been converted; but such a state of facts is widely different from the case, where one partner, in the firm name, but without the actual authority of his partners, obtains money, and applies it to the use of the firm. The firm, in consequence of the defect of authority, might not be liable without the application of the money to firm purposes; but certainly becomes so, the instant the appropriation is made.

This summary of rules, will enable us to determine all the questions presented by the refusal to give the charges requested by the defendants, as well as the charge actually given. It is possible, that all the evidence before the jury was not sufficient to destroy the *prima facie* intendments arising out of the receipt; but we cannot say there was no evidence to be considered in that connection. We cannot, therefore, coincide in the plaintiff's view, that the charges asked are wholly abstract. Without intending to be understood as having given a critical examination to all the instructions refused, we may remark, that the second, fourth, eighth, and ninth, seem to contain propositions entirely clear; and therefore should have been given; but it would also have been proper to have accompanied them with such explanations, as would have prevented their generality from misleading the jury.

The first and fifth charges were properly refused, because the propositions therein contained are not correct, when applied to the facts of this case; and the third, because it assumes the receipt to be one for collection only. The sixth, and seventh, were also properly refused, because not in accordance with the rules deduced.

One error of the charge given to the jury is, that it leaves the *prima facie* construction of the receipt to the jury, when the Court should have declared it; but this, in all probability, did not prejudice the defendants. Another is, that the appropriation by Hogan, of a part of the money collected to the use of the firm, made it liable for the whole amount; without drawing the distinction between the receipt as one for collection only, without ratification by the other partners, and as evidence of a loan of money. The last, and possibly the most important, is, that parol evidence is not admissible to explain the doubtful terms of the receipt; for such we understood to be the effect of the charge.

Let the judgment be reversed, and the cause remanded, that further proceedings may be had, in accordance with this opinion.

[Note.—This cause was decided at June Term, 1844, and should have been published in the 6th or 7th volume of Reports.]