## LIVINGSTON et al. vs. ARRINGTON.

[ASSUMPSIT ON NOTE GIVEN FOR PURCHASE MONEY OF SLAVE—PLEAS, FAILURE OF CONSIDERATION AND FRAUD.]

1. *Warranty in bill of sale of slave construed.*—In a bill ·of sale of a slave, the words, "which said negro I do warrant and defend unto him, the said L., his heirs and assigns forever," are a warranty both of soundness and title.

2. *Bill of sale construed most strongly against maker.*—The salutary rule, that a written instrument, the language of which is of doubtful import, or capable of two constructions, must be construed most strongly against the maker, is applicable to bills of sale of slaves.

3. *Binding effect of judicial decisions.*—In the construction of a warranty in this case, the court adhered to the construction placed on a similar warranty in Duff v. Ivy, 3 Stew. 140; and the decision was based, partly, on the fact that that case has been acquiesced in for more than twenty-five years, and has probably been acted on as a rule of property in many instances.

4. *General warranty of soundness covers what defects.*—A general warranty of soundness does not cover visible and external defects, which are plain and obvious to the purchaser,—such as the eye can discover and enable him to comprehend; but it covers all other defects, even though the purchaser is informed of their nature, character and extent.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. E. W. Pettus.

Livingston et al. v. Arrington.

This action was brought, in August, 1852, by Nicholas W. Arrington against John S. Livingston and others, and was founded on the defendants' promissory note for $400, dated January 1, 1850, and payable twelve months after date, which was proved to have been given, in part, for the purchase money of a slave, named Malinda, sold by said Arrington to Livingston. On the trial, as appears from the bill of exceptions, after the plaintiff had read the note in evidence, the defendants proved that it was executed in payment for the slave Malinda, and then offered the bill of sale in evidence, which is copied in the opinion of the court. The consideration expressed in the bill of sale was $680; but $80 of this sum was for the hire of the slave for the year preceding the sale. The defendants proved that the slave was unsound at the time of the sale; that she had been unsound for several years previously; that her unsoundness rendered her valueless to Livingston; and that she died within six months after the sale. Dr. Peterson, one of the physicians who prescribed for her during her sickness, testified that the slave had irregular menstrual discharges, caused by ulceration of the *os uteri*, and accompanied with dyspeptic derangement of the stomach, and functional derangement of the liver; that the disease was not incurable, though of difficult cure; that her symptoms showed that she had been laboring under the disease for a considerable length of time, until it had become incurable; that he attended her for several months, until she finally died from the disease. "The plaintiff then proved that Livingston hired said slave, and had her in his possession, from the spring of 1849 to the time of the sale; that during this time, while in his possession, she was sick several times; that several times, during that period, he called in a physician to attend her, at intervals of from three to six weeks; that she was diseased during that time as described by the witness Peterson; that said physician, before the sale, informed Livingston of the character and extent of the disease under which said slave was laboring; and said witness stated, that he informed Livingston of the nature and extent of said disease, and that this information was communicated by him in the spring of 1849, and fully all through that year."

On this evidence, the court charged the jury,—

" 1. That the bill of sale, given by Arrington to Livingston, for the slave Malinda, did not contain any warranty of soundness of said slave.

" 2. That if Livingston was apprised of the nature, character and extent of the disease under which said slave was laboring at the date of sale, before he purchased her, then he could not resist a recovery in this case."

The defendants excepted to these charges, and they are now assigned for error.

I. W. GARROTT, for the appellants, contended,—

1. That the first charge, as to the construction of the warranty, was erroneous.—Duff v. Ivy, 3 Stew. 140.

2. That the second charge was likewise erroneous, because the evidence did not bring the case within the principle that patent defects are not covered by a general warranty.— Thompson v. Botts, 8 Missouri, 710; Wilson v. Ferguson, Cheves, 190; 2 Supp. U. S. Digest, p. 721, §§ 227–31; Parsons on Contracts, 459, and note.

WM. M. BROOKS, contra:

1. The warranty contained in the bill of sale, is a warranty of title only, and not of soundness.—Roseman v. Hughey, 1 Rice, 437; 4 Missouri, 14; 3 Hill, 299; 2 Bibb, 616; 16 Vermont, 525. The argument on which the decision in Duff v. Ivy, 3 Stew. 140, is predicated, does not apply to this case; for, here, the words would not otherwise be nugatory. Warranties in the sale of slaves, in the absence of an express stipulation, do not run with the slave, as in the sale of real estate.—9 Dana, 44. This bill of sale does contain such a stipulation, and would protect a purchaser from Livingston. A warranty of soundness applies to the condition of the article at the time of the sale, while a warranty of title extends to all future time. The words, "his heirs and assigns forever," are words of perpetuity, which refer to the future, and are only used in reference to title. They here serve to explain the preceding words, and show that no warranty of soundness was intended.

2. A general warranty does not extend to defects which,

at the time of the sale, are known to the purchaser.—Story on Sales, § 354; Dyer v. Hargrave, 10 Vesey, 505; Margetson v. Wright, 7 Bing. 605; Schuyler v. Russ, 2 Caines, 202; Dana v. Boyd, 2 J. J. Marsh. 587; Brittan v. Israel, 3 Hawks, 222; Long v. Hicks, 2 Humph. 305.

RICE, C. J.—More than a quarter of a century ago, in Duff v. Ivy, 3 Stew. Rep. 140, this court decided, that a warranty of soundness, as well as of title, was contained in a bill of sale in the following words : " Received of Abraham Duff three hundred and fifty dollars, in full payment for a negro named Charity, which I warrant and defend unto the said Duff."            ₊ (signed)            " Thomas Ivy."

The bill of sale which we are called on in the case at bar to construe, is in the following words : " Received, this 16th day of January, 1850, of John S. Livingston, the sum of six hundred and eighty dollars, payment in full for the purchase of negro girl Malinda, which said negro I do warrant and defend to him, the said John S. Livingston, his heirs and assigns forever. In evidence of which, I have hereunto set my hand and seal, day and date above written."

(signed)            " Nicholas W. Arrington."

Our opinion is, that the warranty created by the words, " I do warrant and defend to him, *his heirs and assigns forever*," is not less extensive than the warranty created by the words, " I warrant and defend unto him." We cannot hold that the superadded words, "his heirs and assigns forever," operate in favor of the warrantor, to diminish the extent of his warranty.

It is a salutary rule, applicable, as we think, to all such instruments as those above set forth, that a written instrument is to be construed most strongly against the maker; that when he has used in it language of doubtful or double import, it is to be taken in its strongest sense against him; and that, if it is capable of two constructions, it should receive that which is most unfavorable to him.—Hogan v. Reynolds, 8 Ala. Rep. 59.

In view of this salutary rule, and of the fact that the decision made in Duff v. Ivy has been acquiesced in as the law of this State for more than a quarter of a century, and has

probably been acted on as a rule of property in many in-stances, we shall adhere to and maintain that decision. We hold, therefore, that the bill of sale executed by Arrington to Livingston contains a warranty of soundness, as well as of title, and that the court below erred in its first charge to the jury.

We wish it noticed, that what we have above decided is in reference to the warranty of a slave—*a personal chattel;* and that we do not intimate that any thing we have above decided would be applicable to a warranty as to *land.*

The rule, that a general warranty does not cover defects *plain and obvious to the purchaser,* applies only to defects which are external and visible,—such defects as *the eye* can discover and enable the purchaser to comprehend. That rule has no application to the defects of the slave Malinda, as the same are disclosed in the testimony in this record.—Parsons on Contracts, 459, note (i).

The charges of a court must be construed with reference to the evidence. The second charge of the court in this case, when thus construed, is erroneous.

We deem it unnecessary to notice the other questions pre-sented on the record. For the errors of the court below, in its charges to the jury, its judgment is reversed, and the cause remanded.