[McCrary v. Slaughter.]

# McCrary *v.* Slaughter.

## *Action on Promissory Note.*

1. *City court of Selma; duty of appellate court on reviewing finding on facts.*
Under the statute establishing the city court of Selma, there can be no pre-
sumption in favor of its findings on facts, in civil cases, tried without the in-
tervention of a jury, when brought before this court on appeal; and if the
appellate court finds error of law or fact in such judgment, it must reverse
and render judgment, or remand the cause, as seems proper in the particular
case.

2. *Partnership; what constitutes.*—A joint undertaking and community of
profit and loss, in the results of the business, constitute a partnership, although
each partner retains the exclusive ownership of the separate property con-
tributed by him to the use of the partnership.

3. *Same; what does not authorize partner to make or endorse promissory note
in name of.*—An ordinary partnership for planting or farming in the cultiva-
tion of land, does not involve the power of each partner to bind the partner-
ship, or his copartners, by making a promissory note in the partnership
name.

4. *Same.*—In an agreement for such a partnership, an express stipulation
that one partner shall furnish the mules necessary for the business, and that
neither shall bind the other by contracts, excludes the inference of authority
in the other to bind the partnership by the purchase of mules; and such
power can not be implied, as a matter of law, from the nature and purposes
of the partnership.

APPEAL from City Court of Selma.

Tried before Hon. GEO. H. CRAIG.

The appellee, Slaughter, brought suit in the Circuit Court
against appellant, McCrary and one Blair, to recover the
amount of a promissory note, which the complainant averred
was "made by them under name of Blair & Co." There was
a discontinuance as to Blair, who was not served, and Mc-
Crary pleaded *"non est factum."* The suit was afterwards
transferred to the city court of Selma, where, under the
rules of the court, a trial was had without the intervention
of a jury.

The material facts of the case were as follows: In the year
1867, McCrary had bought and paid for a half interest in a
plantation, and Blair had bargained for and was in posses-
sion of the other half interest. The two entered into an
agreement to cultivate the place that year, which was re-
duced to writing. This writing had been lost, and the court
allowed secondary evidence of its contents. The substance
of this contract was, that McCrary was to furnish the land,
and a certain number of mules (which he did), and half the
laborers; and Blair was to furnish the other half of the labor-

VOL. LVIII.

[McCrary v. Slaughter.]

ers, and his own services, and after paying the expenses, each bearing his own proportion, the proceeds of the crops were to be equally divided between them. It was, also, expressly agreed between them "that neither was to have the right or authority to sign each other's name," or, as Blair expressed it, "neither of us should bind the other by any trade or contract he might make."

McCrary lived in Kentucky, and the plantation was managed by Blair. In the spring of 1867, Blair bought three mules from plaintiffs' agent on a credit, until the first of June following. The agent testified that he sold the mules to the firm, and would not have credited Blair alone; and, afterwards, in August, Blair executed a note for the price, signing it Blair & Co. This was the only time he ever signed the firm name, and it is not shown whether they ever held themselves out as partners, or contracted any debts under a firm name. McCrary was in Kentucky at the time, and did not know of the matter for some time afterwards. Blair testified that he informed Slaughter's agent that he had no authority to sign McCrary's name; but also stated that he was interested in the crop, and the mules were for the benefit of all of them, and Slaughter's agent still insisting, after this, Blair signed the note in the name of Blair & Co. The testimony tends to show that McCrary never acknowledged any liability for the purchase, but, on the contrary, denied it; though, "to help Blair out," he authorized him to use a note, which belonged to them both, to take up the note given for the mules; which offer the plaintiff refused. These mules remained at work on the plantation until the crops were gathered, when Blair sold them to pay some of his debts incurred in the planting operations. McCrary shipped supplies to the plantation to carry on farming operations. Blair testified that he bought the mules because "McCrary was absent in another State, and some of the mules on the place had proved to be insufficient," and in his judgment [Blair's] the purchase of additional mules was "necessary to the making of a crop; and, the plantation being under my management, I deemed, under the circumstances, that my duty to him, as well as myself, required that I should purchase the mules." Nothing was made by the farming operations, and there had never been any settlement between McCrary and Blair.

There were some exceptions to the admission of evidence, not material to be noticed in the view which this court took of the case. The court below rendered judgment for the plaintiff, to which McCrary excepted; and he now assigns it for error.

MORGAN, LAPSLEY & NELSON, for appellants.—The agreement in this case is very like that before the court in *Moore v. Smith* (19 Ala. 774), in which it was held that the farming contracts did not constitute a partnership *enter sese*. For a proper definition of such agreements, see *Counts v. Happel*, 49 Ala. 254, and *Randle v. State*, 49 Ala. 15. Mr. Story says, if no partnership was intended, and the parties have not held themselves out as partners to the public, they should not be held partners as to third parties.—Story on Partnership, § 49. After the plea of McCrary, it devolves on the plaintiff to prove the partnership.—33 Ala. 255. The evidence does not prove it. This court, on reviewing the ruling of the court below on evidence, is forbidden by statute to indulge any presumptions in its favor. But, admitting the partnership, Blair had no authority to bind McCrary by giving a note for mules.—*Cocke v. Branch Bank Mobile*, 3 Ala. 178. See, also, *Judge v. Braswell*, decided by Court of Appeals, of Kentucky, March 27th, 1877.

FELLOWS & JOHN, *contra*.—The contract between Blair and McCrary most certainly made them partners as to third parties.—Story on Partnership, §§ 54-58; Story on Contracts, §§ 204-6. An agreement restricting the rights of the partners to bind each other, was of no force as to persons dealing with the firm.—41 Ala. 283. The evidence shows that the mules were necessary to carry on the farming operations. McCrary knew the mules were on the place. They worked in making the crops, and the partnership got the benefit of the crop. This bound McCrary, although he knew nothing of the original contract. It was a ratification of Blair's act in giving the note.—11 Ala. 534; 10 Paige, 126. The agreement that neither partner should bind the other, can not change the law of copartnership as to matters within the *scope of the partnership*. The character of the business, and the facts of the case prove the necessity for the exercise of this power. Although no presumptions are indulged in favor of the finding of the city court on the facts, the statute does not authorize the appellate court to indulge in presumptions against its findings; and this court can not reverse, unless it can see that the court below was wrong.—*Marlow v. Benagh*, 52 Ala. 113.

BRICKELL, C. J.—The statute establishing the City Court of Selma, provides that civil causes at law, pending in the court, shall be triable by the court without the intervention of a jury, unless the plaintiff, at the commencement of the suit, or the defendant at the time of appearing and plead-

ing, shall demand a trial of issues of fact, by a jury; or, if the cause is introduced into the court, by transfer from the Circuit Court of Dallas county (which is authorized), at the time of application for transfer, a trial by jury is demanded. It is further provided, if the cause is tried by the court without a jury, not only questions of law, but "the conclusion and judgment of the court upon the evidence," may by bill of exceptions be presented to this court for review. In reviewing the judgment of the court upon the evidence, the mandate of the statute is, *there shall be no presumption in favor of the ruling of the City Court.* If this court finds error, whether of law or of fact, such judgment as the City Court ought to have rendered, may be rendered, or there may be a reversal and remandment, as to this court may seem right.—Pamph. Acts, 1875-6, p. 390, §§ 13-14.

This cause was originally commenced in the Circuit Court of Dallas county, and transferred to the City Court, where a trial was had by the court without a jury. Judgment having been rendered in favor of the appellee, who was plaintiff, a bill of exceptions was taken, setting out all the evidence, and we are required to determine the correctness of that judgment rather than any special rulings of the court. There are exceptions to the admission of evidence, not important in the view we take of the case, and we pass them, directing our attention to the consideration of the question, whether the evidence discloses that the appellee was entitled to recover.

The primary question is, whether a partnership existed between the appellant and Blair, who made the promissory note, the foundation of suit; and if such partnership existed, whether this contract was within its scope, and within the capacity of either partner to bind the partnership. The evidence in reference to the facts which must control the decision of this question is, fortunately, without conflict, and we are not embarrassed by the difficulties which must attend the revision of questions of fact under this statute, when the evidence is oral, and the witnesses are contradictory and conflicting in their testimony. The facts are, that appellant was the owner of an undivided half of a plantation, situate in Dallas county, and Blair, though not the owner, had possession, and the right to occupy the other undivided half. In 1866 and 1867, it was cultivated by the appellant and Blair, each furnishing one-half the labor, and the appellant furnishing the mules, or the necessary team, and Blair devoting his personal services to the supervision of its cultivation, and the expenses of the plantation to be borne by them equally, the proceeds or profits of the crops to be

[McCrary v. Slaughter.]

equally divided between them. These facts embrace every element of a partnership. There was a union of the use and occupancy of the lands, of the mules or team provided by the appellant, of the labor each party furnished, of the skill and service of Blair in supervising the cultivation, community in the expenses of the plantation, and in the proceeds or profits of the crops. It may not have been, and was not contemplated, that either party should acquire any right or interest in the property, the other contributed to the joint undertaking. It is not necessary to constitute a partnership, that there should be property forming its capital, jointly owned by the partners. The property employed in the partnership business may be the separate property of the partners, but if they share in the losses and profits arising from its use, a partnership exists.—*Champion v. Bostwick*, 18 Wend. 183. If there is a joint undertaking, and a community of profit and loss, each party sharing in these mutually, and having a specific interest in the profits, not as compensation for services rendered, but as an associate in the undertaking, the relation of partners is formed.—Collyer on Part. Ch. 1. The obvious difference between this case and that of *Moore v. Smith*, 19 Ala. 774, to which we are referred, is the community of profit and loss in which Blair and the appellant were to participate. If there was no profit, neither had a specific interest in the crops or their proceeds. If there was a loss, each was bound to contribute equally to make it good; while in the case cited, Smith had a defined interest of one-fourth in the crops, as compensation for his services, without regard to the profit or loss resulting from the farming operations.

In commercial partnerships, the general principal is, that either partner, by virtue of the relation, is the general agent of the partnership, and has capacity to bind it by any contract or engagement, within the scope of the partnership business. Restraints on this capacity, imposed by the partnership agreement, are operative only between the partners themselves. They are not limitations of authority, as to third persons, dealing in ignorance of them, on the faith of the general nature and character of the partnership, and its business.—*Mauldin v. Br. Bank Mobile*, 2 Ala. 205; *Catlin v. Gilder*, 3 Ala. 536; Story on Partnership, § 101. But one partner has not, without the consent of the others, power to bind the partnership, though he contracts in the firm name, by any contract not connected with and without the scope of the partnership business. The authority with which he is clothed, and on which strangers dealing with him as the representative of the partnership, have the right to rely, re-

[McCrary v. Slaughter.]

fers, and is confined to the business of the partnership; and of the extent and character of that business, and the authority it involves, they must take notice at their own peril.—*Cocke v. Br. Bank Mobile*, 3 Ala. 175. If the contract is not necessarily or usually incident to the business transacted by the partnership, the partner contracting is alone liable, unless the other partners have assented to it.—1 Am. Lead. Cases, 545.

In the application of these general principles, regard must be had to the nature and objects of the partnership, and the business it is formed to transact. A partnership may be formed for the transaction of any lawful business, and partnerships exist in most if not all professions, trades and occupations. Some branches of business and some classes of pursuits involve, from their very nature, power and capacity, in either partner, more limited than that of necessity resulting from others. Commercial partners have an implied authority to borrow money, to draw or indorse bills of exchange or promissory notes, in the firm name, binding the partnership, because these acts are incident to the nature of the partnership business, and may be necessary for its transaction. But partners in the practice of law or of medicine, have no such authority, because such acts are not connected with and are foreign to the nature of the partnership and the objects for which it is formed.—Am. Lead. Cases, 545. If a partnership is formed for, and engaged in buying and selling goods, it is not within the scope of its business to receive and undertake to collect promissory notes, or other evidences of debt; and one partner, by undertaking their collection, would impose no liability on the partnership, though contracting in its name.—*Hogan & Co. v. Reynolds*, 8 Ala. 59. This would lie precisely within the range of the business of partners in the practice of law, as that business is known to be here pursued. Uncontrolled by evidence of usage, which in doubtful cases may determine the inquiry, the test to which the particular transaction must be subjected is, whether it is appropriate to the business in which the partnership is engaged.—Story on Part. §§ 111-113. If it be not, the partnership is not liable, but only those partners entering into or assenting to the transaction. Partnerships in planting, or in farming, do not involve the power in each partner to borrow money, or to draw or indorse bills of exchange or promissory notes, because such power is not necessary or appropriate to the business.—Collyer on Part. § 402, p. 366; Story on Part. § 126. In *Lea v. Guice*, 13 Sm. & Mar. 656, a dormant partner, the partnership business being planting, was charged with a promissory note given by the ostensible partner in consideration of the loan of a promissory note of a third

person, which was used as money in paying a debt of the partnership for overseer's wages. The articles of partnership were in evidence, and as construed by the court, conferred on the ostensible partner large discretion in the management of the plantation, and authority to conduct it according to the necessities, usages, and customs of persons engaged in the business of planting. As the partnership was secret, evidence that it was the usage of planters generally to borrow money and make promissory notes in the course of their business was received. The case has its peculiar facts, which controlled its decision. It is not intimated, that as matter of law, it can be declared from the nature, objects, and business of a planting partnership, that each partner can bind the partnership by making or indorsing promissory notes. It seems to us such power is not involved in the business of such partnerships, now becoming more frequent than formerly. The object and business for which they are formed is the cultivation, gathering, and sale of annual crops. It may be necessary to contract debts, in the course of the business, on short credits, maturing at or about the time the crops will be ready for sale; but it is not necessary to draw or indorse bills of exchange or promissory notes. If such a power was implied, it would, contrary to the intention of the partners, involve not only the property each partner contributed to the joint undertaking, but his entire credit and all his individual property. The business does not, as does the trade of merchants, include such power, and we cannot indulge the presumption that it is usually conducted by such instrumentalities.

Though the note may not impose liability on the appellant, he may be liable on the original consideration, if Blair had authority to bind the partnership by the purchase of the mules. The successful prosecution of the joint undertaking required the employment and use of mules or horses suitable for plowing, hauling, ginning, and, it may be, other work necessary in planting, cultivating, gathering, and rendering marketable the crops produced. It is not insisted that Blair had any express authority to make such purchases, and bind the partnership for payment. The stipulation in the partnership agreement, that the appellant should furnish the mules necessary, as a part of his contribution to the joint undertaking, excludes the idea of such authority, as does the stipulation that neither party should by any contract bind the other. The inquiry then is, whether the authority can be implied as a matter of law from the nature and character of the business. When a contract is made by a member of a commercial partnership, the business of the part-

nership being shown, and the nature of the contract, as matter of law, the court can generally determine whether it falls within the implied power of the respective partners. But if the partnership is not commercial, it is a matter of difficulty to ascertain whether a particular transaction, not indisputably within the scope of the partnership business, falls within the power of each partner which may be implied. In such cases it is said by Judge Story: "To answer the inquiry satisfactorily, it is not enough to show that in other trades or other business, certain rights, powers, and authorities are incident thereto, and may be lawfully exercised by each of the partners; but we must see that they appropriately belong to or are, by usage or otherwise, implied or incidental to the particular trade or business in which the partnership is engaged." If a planting or farming partnership has any joint property, from its business, we would naturally suppose, it was the land it was cultivating, the team, and implements employed in the cultivation. These must exist and be in the possession of the partnership at the inception of its operations. They are usually contributed by the respective partners at the time of entering on the joint undertaking, in such proportions as the agreement of partnership requires. Contracts for their purchase, made by one partner without the concurrence of the others, are not necessary or appropriate to the business. Such contracts are supported only when it is necessary to the successful conduct of the partnership business that power in the partner to make them should be implied, or the exercise of such power is according to the usages and customs of the business. If a power to purchase mules could be implied, the same implication would support a contract for the purchase or rent of land, or for the purchase of a gin, and the limit of the implication it would be difficult to define. If a court cannot clearly see, in reference to these non-commercial partnerships, that a particular contract made by one partner is necessary to the successful prosecution or in accordance with the usages of the business, it is better to let it stand or fall upon the express authority which may have been conferred, or on the assent of the partners, than to indulge implications to support it.

It is scarcely necessary to add that the evidence fails to show that the appellant assented to or ratified Blair's contract of purchase.

We are of opinion the City Court erred in rendering judgment against the appellant, and its judgment must be reversed, and the cause remanded.