(78 South. 921)

HERREN v. HARRIS, CORTNER & CO. et al. (8 Div. 87.)

(Supreme Court of Alabama. April 18, 1918. Rehearing Denied May 30, 1918.)

1. PARTNERSHIP �köm9(2)—CREATION OF RELATION—CONTRACT FOR SERVICES.

A contract by which deceased purchased from defendants a one-fifth interest in a cotton brokerage business, deceased to receive one-fifth of the net profits, and to work for the firm at a stipulated salary, and to share the losses for five years, the parties to the contract being required to use their best efforts to effect the successful management of the business, created a partnership between deceased and defendants.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

2. PARTNERSHIP ⊖⊶275 — TERMINATION — DEATH OF PARTNER.

A partnership is terminated by the death of one of the partners.

3. PARTNERSHIP ⊖⊶275—TERMINATION—PERSONAL SERVICES.

A partnership agreement by which W. purchased an interest in a brokerage business for a stipulated sum in cash, and an agreement on his part to devote his personal services for a period of five years in the management of the business, was terminated by W.'s death, and was not capable of enforcement by or against W.'s personal representatives.

4. CONTRACTS ⊖⊶311—DISCHARGE BY DEATH OF PARTY.

Such contract, if regarded as one not creating a partnership, was discharged by the death of W., since it called for the performance of personal services.

5. PARTNERSHIP ⊖⊶249—DEATH OF PARTNER—RIGHT TO ACCOUNTING.

Where, during the continuance of such partnership and up to the time of his death, W. received his share of the net profits of the firm, and there was no tangible property in existence belonging to the firm, its sole asset being what was derived from the personal efforts of the partners, there was no right to an accounting at the suit of the personal representatives of W.

6. PARTNERSHIP ⊖⊶1—DEFINITION OF.

A partnership exists when two or more persons combine their property, labor, and skill, or one or more of them, in the transaction of a business for their common profit, and such relation does not constitute a corporation a joint tenancy or a cotenancy, but such relation creates a mutual general agency between the members of the firm.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Bill by J. Miller Herren against Harris, Cortner & Co. and others. Decree sustaining demurrer to the bill, and complainant appeals. Affirmed.

Rutherford Lapsley, of Anniston, and Wert & Lynne, of Decatur, for appellant. E. W. Godbey, of Decatur, for appellees.

MAYFIELD, J. The bill seeks an accounting. It is filed by the assignee of a certain contract by which one L. R. Winn, in 1910, acquired a one-fifth interest in the business of appellee, or of a firm of its name. The business was that of cotton merchants, buying and selling cotton. Winn was to receive one-fifth of the net profits of the business, and was to work for the firm at a salary of $100 per month. Winn was also to bear his share of the losses, if any—that is, one-fifth thereof. The contract was to extend from 1910 to 1915, with the privilege of renewal for five years more. The contract concluded with this clause:

"All parties to this contract shall use their best efforts for the accumulation of profits and the successful management of said business, giving such time and attention thereto as to reach the most successful conduct and management of said business."

The business was operated under this contract from 1910 to some time during the year 1912, when Winn died. Settlements of the affairs of the business were made, and the net profits of the business divided according to the contract, during the life of Winn. The last settlement was made after the death of Winn, and his share of the profits thereunder ascertained was paid to his personal representative. Thereafter Winn's personal representative sold the contract to appellant, who files this bill seeking an accounting and settlement, and a recovery of one-fifth of the net profits of the firm accruing since September 1, 1912, the date of the last settlement.

The chancellor sustained a demurrer to the bill, and complainant appeals.

[1-3] The bill is palpably without equity. If the contract relied upon, which was assigned to complainant and which constitutes the sole basis of complainant's rights, created a partnership—and it did—that partnership, of course, terminated at the death of Winn; and its affairs were settled and adjusted between the parties or their representatives, in accordance with the contract, before complainant ever acquired any interest in such contract. There is nothing to show that this contract was ever renewed by Winn's personal representative, or by com-

---

plainant as the assignee thereof. The contract on its face shows that it could not be performed after the death of Winn. By its very terms it required his personal service and supervision. The firm could not bind him or his estate after his death, nor could his personal representative hold the firm to the contract after it was impossible for Winn to perform his part of it.

It is true that the bill shows that Winn paid $5,000 for a fifth interest in the business; but $1,000 of that was paid to him and one-fifth of the net profits for the two years were also paid to him or to his personal representative. There is nothing to show that the firm had any tangible property to which Winn acquired a fifth interest, as for which he or his personal representative has not been paid. The only recovery sought is one-fifth of the net profits of the firm that have accrued from the buying and selling of cotton since 1912. As to these net profits, the complainant shows no right whatever to recover. If Winn were living, and had utterly failed to perform his part of the contract, he of course could not recover. Surely this complainant can have no greater or better right than Winn himself would have if living.

[4] The complainant's right would be no greater or better if it should be held that the contract relied upon did not create a partnership, but merely consummated the sale of a one-fifth interest in the net profits of the business for five years. If this construction could be given the contract, the agreement on its face shows that the consideration was not merely the $5,000 paid, but embraced, as well, the personal services of the purchaser during the five years; that his personal services were looked to, to create or make the net profits which were to be divided. The death of Winn, of course, rendered it impossible for him to further perform his part of the contract, and released the other parties to the engagement from their obligation to him to perform.

[5] As before stated, there is not shown to be any tangible property to which Winn acquired an interest, or to the proceeds of which he acquired an interest. He acquired an interest in a business of buying and selling cotton solely; a share in the profits and losses, not an interest in any particular staple or commodity. This business, from its very nature, depended solely upon the personal efforts, abilities, and capacities of those engaged in conducting it; and a part of this personal equipment Winn was to furnish for five years, in part consideration of his one-fifth interest in the profits, if any there should be. His personal service, from the very nature of the contract, was in part at least the consideration for his interest, and was, in a manner and degree, a condition precedent to his right to participate in the net profits. Such contracts are, of course, very different from those in which an inter-

est is purchased in tangible property, or from those where an interest in the proceeds of property is purchased, or even from those where the subject of the purchase is an interest in the profits of a business which the purchaser is not to conduct or manage, or to promote or carry on which, his personal services are not to be given. The contract in question, tested by the following authorities, constituted a partnership, which was terminated on the death of Winn:

An agreement between two persons to engage in timber business, by which each is to receive and bear respectively certain percentages of the profits and loss of the business, constitutes a partnership. Stafford v. Sibley, 113 Ala. 447, 21 South. 459.

A contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions, constitutes a partnership. To constitute the relation inter sese the contract must extend beyond a common agreement to share the profits. It must equally bind the parties to bear the burden of the losses. McCrary v. Slaughter, 58 Ala. 230; Couch v. Woodruff, 63 Ala. 466; Mayrant v. Marston, 67 Ala. 453; Goldsmith v. Eichold, 94 Ala. 116, 10 South. 80, 33 Am. St. Rep. 97.

To constitute a partnership, it is not necessary that there should be property forming its capital, jointly owned by the partners; the property employed may be the separate property of one of the partners, but if they share in the losses and profits arising from its use a partnership exists. McCrary v. Slaughter, 58 Ala. 230.

If there is a joint undertaking and a community of profit and loss, each sharing in them mutually, and having a specific interest in the profits, not as compensation for service rendered, but as an associate in the undertaking, the relation of partners is formed. McCrary v. Slaughter, 58 Ala. 230.

The death of one partner works a dissolution of the partnership, and vests the title to the property and debts in the survivor. Lee v. Wimberly, 102 Ala. 539, 15 South. 444.

It is certainly true, as a general proposition, that the death of one partner ipso facto dissolves the partnership. Espy v. Comer, 76 Ala. 501; Davis v. Sowell, 77 Ala. 262; Comer v. Reid, 93 Ala. 391, 9 South. 620.

[6] A partnership exists when two or more persons combine their property, labor, and skill, or one or more of them, in the transaction of business, for their common profit. A copartnership is not a corporation, nor a joint tenancy, nor a cotenancy. Some of its qualities and characteristics are similar to those of these other modes of joint interest. But it has its own system of rules and principles of law which must govern all the questions arising under it; and mistakes have arisen from attempting to bring rules from these other modes of joint interest to control

questions of partnership. 1 Parsons on Contracts, 167.

Partnerships are founded in and must repose upon mutual confidence and trust; the members are general agents for each other in the business, and a single act of dishonesty or even of imprudence on the part of one member may bankrupt them all. The law will therefore never force a partner upon an unwilling person; and where the association is terminated by the death of one, his representative cannot demand of right admission to the business as a partner, for the very conclusive reason that the unlimited trust and confidence which the relation demands may not exist in respect to him. Chittenden v. Witbeck, 50 Mich. 420, 15 N. W. 526.

If a partner abandons the firm business and refuses to perform his duties as a partner, his copartners may elect to consider the partnership dissolved. And if the copartners carry on the business successfully, the deserter cannot claim a share of the subsequently earned profits, where neither his efforts nor his capital have contributed. Bates on Partnership, § 589; 17 Am. & Eng. Ency. Law (1st Ed.) 1108, 1109, and cases cited; 19 Eng. Rul. Cas. 569, note.

It follows that there was no error in sustaining the demurrer to the bill.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.