## COCKE v. THE BRANCH BANK AT MOBILE.

1. One of a firm of tavern keepers, has no authority to bind his co-partner, by a note, of which the consideration has no connexion with the business of the joint concern; and the want of such consideration may be shown in defence to an action, by a *bona fide* holder of the note.

Writ of error to the County Court of Mobile county.

MOTION by the Bank for a judgment against the defendants, as makers of a promissary note. The defendants pleaded *non assumpsit;* and it was agreed between the parties that this should stand as a plea of *non est factum,* denying the execution of the note and its indorsement by Lea & Langdon, the payees.

At the trial, the plaintiffs produced a note for the sum of $4609, signed, J. F. & W. Cocke, payable to Lea & Langdon, and indorsed thus : Lea & Langdon, in liquidation. The plaintiffs then proved that the signature was in the hand writing of J. F. Cocke, one of the defendants; that the defendants were tavern keepers and partners ; that the note was transferred to the Bank by Lea & Langdon, in liquidation of their debt to it; and that each partner of this firm had authority to sign the name of the firm, in liquidation of partnership debts.

The defendants then proved by Martin A. Lea, that he obtained the names of the defendants in blank ; that the names were signed by J. F. Cocke, without the knowledge of Woodson Cocke, the other partner; that said Cocke owed Lea & Langdon no money, and was under no obligation to him ; that no part of the proceeds of the note was appropriated to the defendants ; that they are partners in a publi⸱ house in Marion, and carried on no mercantile business; that the note was transferred in liquidation of Lea & Langdon's debt; and that the indorsement was made after the dissolution of the firm. The defendants further proved, by another witness, that J. F. Cocke, left the blank signature of the firm of J. F. & W. Cocke, with Martin A. Lea, one of the firm of Lea & Langdon; this witness, sometime afterwards at the instance of said Lea, wrote the note over the blank signature ; that Woodson Cocke had no knowledge of the name of the firm being left or used; that neither of the defendants had any knowledge of the note being filled up, or of its being used by Lea & Langdon; that they had no interest in the consideration of the note, and derived no benefit from its transfer to the bank ; that the defendants were tavern keepers in the town of Marion, Perry county, and were only partners as such ; that it was not usual for such partners to give or transfer bills or notes to a large amount, and that it was not necessary, in business of that kind; that the firm of J. F. & W. Cocke were doing no mercantile business, but they bought and sold spirituous liquors for the use of their tavern.

The Court charged the jury, that the want of consideration was not a matter for them to investigate ; if one gives his name to another, in blank, he thereby puts himself in the power of that other, to any amount he thinks proper to use the blank : a

partner cannot commit his co-partner for any thing not connected in some manner or other with their partnership business; and if this note was made for any other purpose than in the course of business, Lea & Langdon, to whom the note is payable, could not recover of W. Cocke, who it seems was not privy to the transaction: But the question is, was the Bank acquainted with the circumstances under which the note was made? If so, it cannot recover—otherwise, it must.

A partner may not bind his co-partner after the dissolution of the partnership; but in dissolving, they may, by mutual agreement, bind each other in the liquidation and closing of the concerns of the firm. If the presiding Judge was indebted to one of the jury, and agreed to give him the note of another, in liquidation of the debt, the juror would recover on that note, although the Judge might have obtained it unfairly, unless, the juror was advised or notified of the manner in which it was obtained.

The Court was requested by the defendant, to charge the jury:

1. That should they believe, J. F. & W. Cocke, were tavern keepers in the town of Marion, and that J. F. Cocke signed the names of the firm in blank, under the circumstances stated by the witnesses, and it had no connexion with their business, as tavern keepers, then the plaintiff ought not to recover against Woodson Cocke.

2. That should they believe the note declared on was taken by the Bank, in liquidation of the then existing liabilities of Lea & Langdon; that no new or present consideration was given for the same; that no existing security was released, and that Lea & Langdon were still liable to the Bank for their debt— then the plaintiff did not give a suitable consideration for the note, and ought not to recover.

3. That should they believe the firm of Lea & Langdon was dissolved at the time the note was indorsed to the plaintiff; and that the indorsement of Lea & Langdon was made without the knowledge of Langdon, then the legal title was not transferred to the Bank, and the plaintiffs ought not to recover.

These charges were refused; and thereupon, the defendants excepted as well to the charges given, as to the refusal to instruct as requested. They now assign that the Circuit Court

erred in the several matters covered by the bill of exceptions.

CAMPBELL, for the plaintiffs in error, relied on two positions:

1. That the defendants were not partners in *trade*, and there-fore had no authority to bind each other, unless an authority beyond the mere fact of partnership is shewn. The Bank is bound to know the extent of an authority when it is implied from the condition of the parties ; if the defendants were partners *in trade*, then a general authority would be implied; if partners in a business, not connected with trade, then the public is held to inquire into the authority of one of the partners, when he attempts to bind the firm, as none is implied from the nature of the business. Dickinson v. Valpy, 10 B. & C. 128; Cary on Part. 47, Byles on Bills, 20; 6 Esp, 18; 4 Dana, 375.

2. That the transfer by Lea to the Bank, was unauthorised by Langdon and consequently, the property in the note did not pass by the indorsement. Whatever equitable title the Bank may have, it cannot prevail against the defendants. Gow on Part. 310 : Sanford v. Mickles, 4 Johns. 224; 1 Nott & McC. 561; 1 Starkie 375; 2 Johns. 300; 1 McCord, 388; 3 Esp. 108; 18 Pick. 505; Gow on Part. 77 ; Kilgore v. Finlayson, 1 H. B. 155.

GOLDTHWAITE, J.—1. The first and most important question to be determined here is, whether Woodson Cocke is bound to the payment of the note, executed in the partnership name by his partner.

It is not denied that a copartnership may be formed with respect to any legal business, and the acts of one, with reference to any matter connected with the joint business, will bind the others; but it is insisted that the liability of a partner to pay a note executed by his co-partner, when it is has been put in circulation without any consideration connected with the partnership business, only extends to cases of mercantile partnerships. When the subject is examined, it will be found that the rule is adopted into the common law, from *the usages and customs of merchants*, and applies only *to partnerships in trade.* In such partnerships, each partner is presumed to have the authority to make and indorse promissory notes and bills of exchange ; and if a bill or note is issued in the name of the firm, it

will bind all the members of it, when in the hands of a *bona fide* holder, although one of the partners may have put it in circulation in fraud of the others. Chitty on Bills, 45, note M. and cases there cited.

The citation of one or two authorities, will make it sufficiently obvious that there are partnerships to which the rule of the law merchant does not apply. Thus, in the case of Williams v. Thomas, 6 Esp. 18, Lord Ellenborough held, at *nisi prius*, that a *bona fide* holder could not maintain an action, on a bill of exchange, excepted by one of several joint owners of a ship, in the names of all on whom the bill was drawn. The bill on its face, purported to be drawn for goods furnishsd to the ship, but in fact, was drawn for an account unconnected with it. And in the case of Dickinson v. Valpy, 10 B. & C. 128, the action was also by a *bona fide* holder, and the defendant was sought to be charged as one of the members of a mining company on a bill drawn and accepted by order of the directors of the company. It was held to be incumbent on the plaintiffs to prove that the directors of the company had authority to bind the other members, by drawing or accepting bills; and that the plaintiff not having produced the deed of copartnership, nor given any evidence to show that it was necessary for the purpose of carrying on the business of that mining company, or usual for other mining companies to draw or accept bills, there was no authority shewn to draw or accept bills; and still less to accept bills in this form, which in effect, were promissory notes.

From these cases, it seems to be questionable whether, partners not in the trade of merchandise, can bind their co-partners by a bill or note; but conceding that they may do so for all matters connected with the partnership business, these decisions are conclusive to show, that beyond this, one partner cannot be bound by another, unless an authority is expressly given, or can be inferred from the circumstances attending the transaction.

In this case, it is stated that the defendants purchased spiritous liquors for the purpose of selling and using in their tavern. This certainly cannot have the effect to make the business of tavern keeping a mercantile trade, so as to bring it within the influence of the custom of merchants.

It is difficult to conceive of any partnership business which does not require some purchases to be made in the usual course of it, and this fact is conclusive to show that the mercantile law does not attach to partnerships for such a cause merely; for otherwise, the case of the ship owners, and of the mining company, would have been within it.

The law presumes that the Bank, if it inquired at all into the partnership of the defendants, must have received information, that they were not partners in a mercantile trade, but only in the business of tavern keeping. This ascertained, it took the note at its peril, and must have relied on the faith of the indorsers. We are constrained to declare that Woodson Cocke, is not bound to the payment of this note, under the circumstances disclosed.

With respect to the question, how far the Bank could acquire an interest in this note, under the indorsement of Lea, after the dissolution, we think the case is not sufficiently presented on the facts, to enable us to enter upon it without some risk of deciding a point not involved. We may remark, however, that it is difficult to conceive how Lea, could have been authorised to sign the name of Lea & Langdon *in liquidation*, unless some effect is given to such an authority. Whether his indorsement, under such an authority, would transfer the title or bind the firm, may not be necessary to decide in this case, under the view we have taken. We therefore decline now to consider it.

Let the judgment be reversed, and the case remanded.