# Woodruff *v.* Scaife.

### *Action for Medical Services Rendered.*

1. *Contract of partner; when binding on co-partner or partnership.*—As to the authority of one partner to bind the partnership by his acts or contracts, a trading (or commercial) partnership is generally governed by the law-merchant, of which the courts take judicial notice; but, in the case of other partnerships, the contract of one partner is not binding on the partnership, unless it is shown (1) that he had express authority, or (2) that it was necessary to carry on the business, or (3) that it was usually incident to other partnerships of like nature.

2. *Same; partnership in farming or planting.*—A partnership to carry on the business of farming or planting, is not a trading (or commercial) partnership; and one of the partners has not, as matter of law, authority to bind the other, or the partnership, by a contract for medicine and medical services furnished and rendered to the laborers employed by them.

3. *Statute of frauds; promise to pay debt of third person.*—A promise to pay the debt of another, out of moneys belonging or coming to him in the hands of the promisor, is not within the statute of frauds (Code, §2121, subd. 3), but is a promise to pay his own debt in a particular way.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. J. M. CARMICHAEL.

This action was brought by W. L. Scaife, against Henry Woodruff, as a member of the partnership of Woodruff & Howard, to recover the sum of $155, alleged to be due by account for medicines and medical services furnished by plaintiff, during the year 1884, to the laborers and tenants employed on a plantation which belonged to said Woodruff and T. O. Howard, and which was cultivated by them as partners during that year. The defendant pleaded the general issue and the statute of frauds, alleging that the promise sued on was an agreement to pay the debt of another person, and was not in writing; and issue was joined on both of these pleas. On the trial, as appears from the bill of exceptions, the plaintiff proved by his own testimony and that of Dr. Gilbert, who was his partner at the time, the performance and value of the medical services by them for the negroes on the plantation; and they both testified, that this was done under contracts made with the negroes, on the suggestion of said Howard "that he would pay the accounts, reserving money for that purpose from the wages coming to

the negroes; that the credit was given to Woodruff & Howard, and not to the negroes, and was charged to them; that they knew Howard and Woodruff were partners in the farming operations, and relied on this fact in making the contract." Howard, testifying as a witness for the defendant, admitted that, at the time stated by plaintiff, they had a conversation in reference to the medical services to be rendered to the negroes on the place, but denied that he had made any contract with plaintiff; and said, on the contrary, "that he told plaintiff he would make no contract at all, for many reasons; that they were running the place together, under an agreement to make no contract of any kind without mutual approbation; that they had different contracts with the negroes, and had always refused to become responsible for medical services; and that he must look to the negroes for payment, if he gave them medical services." As to the partnership of Woodruff & Howard, each of them testified, "that they are joint owners of the land, and engaged in farming on it; that the only agreement between them was, to hire hands, feed them, and make a crop, and this was the only object of the partnership, its utmost limit and extent."

On this evidence, the court charged the jury as follows: (1.) "If the jury believe from the evidence that the plaintiff had contracted with the negroes to perform the services alleged, and that said contract was not in writing, and not executed; then an agreement on the part of Woodruff & Howard to pay the same, if not in writing, was void; but that Howard could have made the contract as his own, and thus bound both himself and Woodruff, if they were partners." (2.) "If the jury believe from the evidence that the defendant was engaged with Howard in carrying on farming operations on the place, their partnership having been formed for that purpose alone, and that they were such partners at the time; then the defendant was bound by any contract made by Howard, for such things as were necessary to carry on said farm, and that medicines and medical supplies to the hands on the farm were a part of such necessaries." The defendant excepted to each of these charges, and he now assigns them as error.

J. F. WADDELL, and J. B. MITCHELL, for appellant, cited Code, § 2121; *Cocke v. Br. Bank*, 3 Ala. 178; *McCrary v. Slaughter*, 58 Ala. 236; *Cooper v. Frierson*, 48 Miss. 309.

NORMAN & SON, *contra*, cited *Scott v. Myatts & Moore*, 24 Ala. 489; *Oliver v. Hire & LeBaron*, 14 Ala. 590; *Rolston v. Click*, 1 Stew. 526; *Mauldin v. Br. Bank*, 2 Ala. 502.

SOMERVILLE, J.—The second instruction of the court asserts the proposition, that, where a partnership is formed between two persons to carry on the business of farming, or planting, each partner has the implied authority, as matter of law, to bind the firm for medicine and medical supplies furnished by a practicing physician to the laborers employed on the farm, or plantation, cultivated by the partners.

The partnership in this case is not a trading or commercial one, which is generally governed, as to its scope of authority, by the rules of the law-merchant, of which the courts take judicial cognizance. The principle governing a non-trading partnership is well settled. There are three classes of cases where each partner connected with such associations may lawfully bind the firm; the burden, in each case, being on the plaintiff to prove the facts by which such authority is established, or from which it may be implied: (1) where he has express authority to do so; (2) where the contract made, or thing done, is necessary in order to carry on the business of the partnership; (3) and where it is usually or customarily incident to other partnerships of like nature. *McCrary v. Slaughter*, 58 Ala. 230; *Smith v. Sloan*, 37 Wis. 285; s. c. 19 Amer. Rep. 757; *Cocke v. The Branch Bank of Mobile*, 3 Ala. 175; *Lee v. Guice*, 13 Sm. & Mar. 656; *Dickinson v. Valpy*, 10 B. & C. 128.

In the present case, no express authority was shown for Howard to make the contract in question, by which he was alleged to have employed the service of the plaintiff as a physician to attend upon the farm laborers, or to furnish them medicines. It does not appear, as matter of law, nor was it shown as matter of fact, that this was necessary to carry on the farming business, and the court therefore erred in so declaring. Nor was any attempt made to prove that such contracts were customary or usual in carrying on farming operations in this State, or even in the particular locality. Under this view of the law, the court erred in giving the second instruction to the jury.

2. If the promise made by Howard was to pay the plaintiff for his services out of any fund due by the firm to the farm laborers for wages, it would not be an agreement ob-

[DeLacy v. Tillman.]

noxious to the statute of frauds, as the promise to pay the debt of another, although the partnership of Woodruff & Howard be not regarded as the original debtors. Such promise to pay a certain sum, due by another, out of a trust fund in the hands of the promisor, is, in substance, a promise to pay his own debt in a particular way, the debt of another coming in, as has been said, only "incidentally as a measure of damages."—*Wolff v. Koppell*, 3 Hill, N. Y. 458; *Westmoreland v. Porter*, 75 Ala. 452, 458; *Blount v. Hawkins*, 19 Ala. 100; Browne on Stat. Frauds, §§ 214a, 212.

The rulings of the Circuit Court conflicted with these principles, and its judgment must be reversed and the cause remanded.