# Collier & Pinckard *v.* McCall.

*Action for Damages for Breach of Contract in Failing to Procure Insurance.*

1. *Attorneys negotiating loan; act of partner binding partnership.* Where two attorneys at law, engaged as partners in the business of negotiating and procuring loans, procure a loan for one of their customers, one of the conditions of the loan requiring that the property mortgaged to secure it shall be insured by the borrower; and the money for the premium is paid to one of them, but no insurance is in fact procured; *held*, in an action by the borrower against the attorneys after the destruction of the property by fire, that the "whole transaction is somewhat outside of the routine of ordinary professional attorneyship," but that the court can not declare, as matter of law, that the act of the partner receiving the premium was outside of the partnership functions, or that the partnership was not bound by it.

2. *Who may sue for failure to insure mortgaged property.*—Where a loan of money is procured on mortgage, and it is stipulated that the borrower shall insure the mortgaged property, in the name and for the

[Collier & Pinckard v. McCall.]

benefit of the lender; although the insurance money, in the event of a loss, is payable to the lender, the borrower is entitled to a credit for the amount on the mortgage debt; and this gives him a right to maintain an action against the attorneys who procured the loan for him, and who failed to effect the insurance as they undertook and promised to do.

3.  *Variance; charge on different phases of evidence.*—Where the testimony of the parties, as to the terms of the verbal contract between them, is inconsistent and contradictory, charges may be asked based on either phase of the case; but the discrepancy is not such a variance as authorizes a general charge for the defendant.

APPEAL· from Montgomery Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

Appellants, who were lawyers and engaged in the business of negotiating loans, undertook to, and did, obtain a loan for Mrs. McCall, who secured the payment of said money loaned by executing a mortgage on lands in Lowndes county, upon which there was a dwelling-house. Collier, one of appellants, told Mrs. McCall, or her agent and husband, that as part of the security this dwelling-house must be insured against fire, and she then gave him the money with which he was to take out an insurance policy in the sum of $1,000.00 for three years and pay the premium. Collier & Pinckard failed to procure the insurance and the house was burned the following year.

Mrs. McCall brought suit for damages resulting from the breach of contract and obtained judgment.

ROQUEMORE, WHITE & LONG, for appellants.

E. P. MORRISSETT, and WATTS & SON, *contra*.

STONE, C. J.—There appears to have been no dispute in this case, that one of the conditions on which Mrs. McCall obtained the loan of seven thousand dollars, was that the dwelling on the mortgaged plantation should be insured at Mrs. McCall's expense, for the sum of one thousand dollars. Nor is there dispute that eighteen dollars, the sum necessary to pay the premium on that amount of insurance for a term of three years, was furnished by McCall, acting for his wife. And it is proved that this money was paid to Collier, of the firm of Collier & Pinckard. Nor is it pretended that the insurance was ever taken out. Up to this point, there is neither conflict nor divergence in the testimony.

Collier & Pinckard were and are attorneys at law, engaged in the business of negotiating and obtaining loans of money

for their customers, or clients, for a reward or commission. It is through their agency that borrower and lender are brought together. They are not the agents of the loaning capitalists, or syndicate. They are the agents of the borrower. The borrower retains them and their services, through them submits his proposition, put in shape under their directions, places his security at their disposal, and need not, and generally does not know from whom the money is obtained. Till the loan is fully agreed on in all its terms, he knows and need know only the soliciting attorneys. Such is the relation, as the testimony in the record before us tends to show.

It is contended for appellants that the act of Collier in receiving Mrs. McCall's money, and in promising to have the dwelling insured, was outside the pale of their powers as partners and attorneys at law, and therefore the act of Collier did not bind the firm. To this it may be answered that the whole transaction is somewhat outside of the routine of ordinary, professional attorneyship. As retained canvassers for the loan, it would seem that the duty was on them to present the security offered in such form as to invite favorable consideration and acceptance. It was surely their duty to so conduct the negotiation, as to secure the loan if possible. We can not, as matter of law, declare precisely what duties the trust imposed upon them. That would depend largely upon the terms of their employment, as either expressed in the contract, or implied in the nature of the service, and the usages connected therewith. Was it not their duty to see that the title was unincumbered, and that the mortgage security contained the requisite stipulations? Could less than this be a proper discharge of their duty as soliciting attorneys? And if insurance was one of the conditions on which loans were granted, was it not equally their duty to inform the borrower, and look after its performance? Collier requested that the policy should be taken out, as one of the securities of the loan, and he received the money, with which to pay the premium. This he admits in his testimony. He thus not only accepted Mrs. McCall's money, but he lulled her into inaction and repose in the matter of taking out the policy. And he receipted for the money in the firm name of Collier & Pinckard, saying it was "to be used in purchasing an insurance policy for $1,000." We can not, in the absence of all explanatory proof, and as matter of law, declare that this act of Collier was outside of the partnership functions,

[Gaston et al. v. Weir.]

or that the partnership is not bound thereby.—*Woodruff v. Scaife*, 83 Ala. 152.

It is further contended for the appellants that there is a variance between the averments and proof, which rendered it proper that the general charge should have been given in their favor. There is no material variance between the substantial parts of the second count, and the testimony in the cause.

McCall testified that Collier, when he received the money promised to take the insurance on the dwelling. Collier testified that his promise was to forward it "to the American Freehold Land and Mortgage Company of London, limited," the lender, and that he had done so. No charge is shown to have been asked as to this discrepancy, nor, specially on either phase of the testimony. This did not present a case for the general charge,—3 Brick. Dig. 110, § 55.

If the policy had been taken out as agreed, it would have been made payable to The American Freehold Land Mortgage Company of London, limited. Such was the requirement, and such the agreement. It was intended to be, and that would have been its effect, a mere strengthening of the mortgage security. The loss in case the dwelling thus insured had been burned, would have been payable to the lender, and not to Mrs. McCall. It would have inured to her benefit, however, in this: that having paid the premium, the thousand dollars insurance payment of the loss, would have entitled her to a credit *pro tanto* on her borrowed money debt.—*Com. Fire Ins. Co. v. Cap. City Ins. Co.*, 81 Ala. 320. Hence her interest which enables her to maintain this suit.

Affirmed.