[Clark & Wadsworth v. Jones.]

85   127
110  459

# Clark & Wadsworth *v.* Jones.

*Action on Common Counts, with Count on Special Contract.*

1. *Statute of frauds; promise to answer for debt or default of another.*
A promise by defendant to plaintiffs, who had furnished lumber to a
contractor to be used in the erection of a house for the defendant, that
he would pay their claim out of the next installment due to the con-
tractor, if they would not file it as a statutory lien-claim against the
property, is a promise to answer for the debt or default of a third person,
and not a new and original undertaking; and it is void under the statute
of frauds (Code, § 1732), unless in writing.   (STONE, C. J., dissenting.)
2. *Same; promise by defendant to contractor, to pay in consideration of
rescission.*—A verbal promise by the defendant to the contractor, before
the completion of the house, to pay the outstanding claims of plaintiffs
and others, if the contractor would surrender the contract, is supported
by a sufficient consideration, and is not within the statute of frauds;
but, if the contractor had already abandoned the contract, and there
was nothing due him, the promise would be without consideration, and
would not support an action by plaintiffs.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN P. HUBBARD.
This action was brought by Clark & Wadsworth, suing as
partners, against Wm. B. Jones, and was commenced on the
20th September, 1886.   The complaint contained the com-
mon counts, each claiming $311.94, and a special count on
an alleged promise by the defendant to one W. C. Wright,
who had contracted to erect a house for the defendant, and
had bought lumber and materials from the plaintiffs, who
were then doing business under the name of A. S. Stewart &
Co., which were used in the construction of the house, to pay
the outstanding claims of plaintiffs and others.   The special
count alleged, that this promise was made by the defendant
to said Wright, on a settlement had between them on, to-wit,
the 1st September, 1884, when it was ascertained that the
defendant was indebted to Wright in a large sum; and that
the defendant then retained, out of the amount due to Wright
under the contract, a sum of money sufficient to pay these
outstanding claims.   The defendant pleaded, in short by
consent, *non assumpsit*, and the statute of frauds; and issue
was joined on these pleas.
On the trial, as the bill of exceptions shows, the contract
between the defendant and Wright, dated April 29th, 1884,

was read in evidence without objection. By its terms, Wright undertook to build a house for defendant, according to certain specifications, and to complete it by the 11th July, 1884, for the sum of $2,000, payable in installments; the last installment, $500, to be paid "at the final and satisfactory completion of all the work according to the said plan and specifications." It was proved, also, that the plaintiffs sold lumber to Wright, to the amount of their claim in this case, to be used in the construction of defendant's house, and which was so used; and that Wright gave them, for this lumber, two orders on the defendant—one dated June 30th, for $243.85, and one of later date, for $59. These orders were presented to defendant, by plaintiffs' agent, and he refused to accept them; but he afterwards paid Wright on the contract, between the 10th and 26th July, $375.

One Horton, a witness for plaintiffs, who presented the orders to the defendant, testified that, on defendant's refusal to pay or accept them, "witness notified him that, unless he would agree to pay the orders out of the amount which was then, and should thereafter become payable to Wright, A. S. Stewart & Co. would file a lien against the house; and that defendant thereupon agreed, if they would not file a lien for their claim, he would pay these claims out of the next payment due Wright, which would be $500." Wright, also a witness for the plaintiffs, testified that, "after July 26th, his means being limited, he himself being sick, and the persons from whom he had purchased materials for the building having stopped his payments in the defendant's hands by notices of liens, he was unable to proceed with his contract; that he met defendant on the 14th August, when defendant agreed, if witness would surrender his contract for the building, he would assume and pay the bills for materials which witness then owed; that defendant then wrote down, on a piece of paper, the names of the four persons or firms to whom witness was then indebted, including A. S. Stewart & Co., and also wrote out a paper which witness signed, and which was intended as a surrender of the contract." This writing was produced, and was a formal surrender of the contract by Wright, declaring his inability to complete it, in consequence of sickness on his own part, and because all payments that might become due him had been stopped in defendant's hands by notices of statutory liens. The defendant, testifying as a witness for himself, "denied that he had ever agreed with either Horton or Wright to pay the orders

[Clark & Wadsworth v. Jones.]

in favor of plaintiffs, but, on the contrary, had expressly refused to accept or pay them; and he further testified, that Wright abandoned the work about the 26th July, and was not at the house until after the written abandonment signed on the 14th August; that finding Wright was unable to complete the house, and in order to be able to complete it himself, he wrote said paper of August 14th, which Wright signed; that at that interview · between them, in order to show Wright that he could not complete the work, witness made a memorandum on a pad of paper of the amounts then owing by Wright to several parties, including plaintiffs, which had been presented to him as liens, but he never at any time promised to pay or assume these debts." Other witnesses for the defendant corroborated his testimony.

The court charged the jury, at the instance of the defendant, "that even if the defendant did promise to pay the lumber bill of A. S. Stewart & Co., and, in consequence thereof, they did not file their claim for a lien under the statute; yet, if his promise was not in writing, signed by him, or by some one authorized by him to sign the written promise, then plaintiffs can not recover." The plaintiffs excepted to this charge, and requested the court to instruct the jury, "that if they believed from the evidence that the defendant, at any time, promised or agreed with either Wright or Horton that he would retain or hold back, out of the money to be paid to Wright on the contract, enough to pay the claims or orders of plaintiffs; then, if they believe from the evidence that he afterwards became or was indebted to Wright in a sum as great as the orders, it was his duty to retain this amount, and he would be liable if he failed to do so." The court refused this charge, with others requested by plaintiffs, and they excepted.

The charges given, and the refusal of the several charges asked, are now assigned as error.

TROY, TOMPKINS & LONDON, for appellants.—The defendant's promise was not within the statute of frauds, being an original promise, on a new consideration; and being, also, a mere promise to apply money due to Wright, or to become due to him under the contract, in satisfaction of his debt to plaintiffs.—Throop Verb. Agreements, § 519; *Hodgson v. Anderson*, 3 B. & C. 842; *Phillips v. Gray*, 3 E. D. Smith, 69; *Clark v. Hall*, 6 Halst. N. J. 78; *Russell v. Babcock*, 14 Me. 138; *Hilton v. Dinsmore*, 21 Me. 410; *Burkham v.*

[Clark & Wadsworth v. Jones.]

*Mastin*, 54 Ala. 122; *Threadgill v. McLendon*, 76 N. C. 24; *Thornton v. Williams*, 71 Ala. 555; *Westmoreland v. Porter*, 75 Ala. 452.

WATTS & SON, *contra*.

CLOPTON, J.—W. C. Wright was indebted to plaintiffs for lumber furnished to be used in building a house, which he had contracted with defendant to build for two thousand dollars, payable in five installments, the last of which, being for five hundred dollars, was payable on completion of the house according to the plans and specifications. The first claim of plaintiffs is, that in July, 1884, the defendant promised the plaintiffs' agent, if they would not file a lien against the house for their claim, he would pay the same out of the next payment due Wright. The promise was not in writing. The instructions of the court present the question, whether the promise is within the statute of frauds, which requires "every special promise to answer for the debt, default or miscarriage of another," to be in writing, expressing the consideration, and signed by the party sought to be charged. The doctrine which distinguishes between an original promise—a new debt of the promisor—and a collateral undertaking—a guarantee or suretyship for the debt of a third person, is often difficult of application; but there are some tests, which may be regarded of controlling, though not conclusive consideration. The true test appears to be, whether the undertaking of the promisor was essentially a new debt of his own, while the payment of the third person's debt was a collateral or incidental consequence, or was the latter its principal and direct purpose.—Bishop on Contr. §§ 12, 63. Generally, any promise to pay another person's debt, which is not discharged or released by the terms of the promise, or other contemporaneous arrangement, is within the statute. To this rule there are exceptions. A party may make a valid oral contract, which operates to create a new debt of his own, if founded on a new and independent consideration, though the effect of the payment is to pay another's debt. In order, however, to have this effect, the essence of the new undertaking must be the payment of the promisor's own debt, by paying the debt of a third person.

The consideration relied on to support the promise of defendant, and to constitute it his own debt, is the forbearance

[Clark & Wadsworth v. Jones.]

of plaintiffs to file a lien for their claim. The plaintiffs had no lien on the property, and surrendered none. They were sub-contractors, and if they had filed the statement required to obtain a lien, they could only have subjected any unpaid balance in the hands of defendant, and would have acquired a lien on the property to secure the payment of the same only to that extent.—Code, 1876, § 3444. The forbearance to file a lien was not of benefit to the defendant, and filing it would not have operated a detriment to him, in the legal acceptance of the terms. If filed, he could not have been made liable to pay more or otherwise than as provided by his contract. The plaintiffs would not have a lien to which his interest was subordinate. There being no agreement or understanding that the debt of Wright should be discharged or postponed, the undertaking of defendant did not constitute a new and substantive debt of his own, to which the payment of Wright was collateral or incidental, but rather the principal purpose. Forbearance to enforce a demand against the original debtor by suing out an attachment, it has been held, does not constitute an original promise on a new and independent consideration, so as to take it out of the operation of the statute of frauds, although the promisor had at the time a lien for advances subordinate to the lien of the promisee for rent.—*Westmoreland v. Porter*, 75 Ala. 453. It is said: "The essential and real function of such new agreement, however, is to pay a new debt contracted by the promisor, upon a new consideration of benefit to himself, and moving from the promisee; and, although this becomes his own debt, he agrees to discharge it by paying a debt due by another, which is a mere incident of the transaction." Though the forbearance to file the lien may be a sufficient consideration to support a promise to pay the debt of Wright, such promise is required by the statute of frauds to be in writing, expressing the consideration.

Plaintiffs further claim, that the defendant promised Wright to assume and pay their demand, and the claims of others, in consideration that he would surrender his contract. This promise, not having been made to the plaintiffs, or to any person representing them, is not within the statute of frauds. A promise by a person to pay the debt of another, if made to him, and supported by a new consideration, is valid, though not in writing. Undoubtedly, the parties to a contract, before a breach, may rescind at pleasure, and their mutual assent is a sufficient consideration. There is evidence

tending to show that Wright had committed a breach of the contract by abandoning it before the alleged rescission, and it is undisputed that it had become impossible for him to complete the house. An agreement made to prevent the breach of a contract, or, after the breach, to assume and pay the liabilities of the contractor, without other consideration than the mere agreement to rescind, is *nudum pactum*. *Burkham v. Mastin*, 54 Ala. 122. But if Wright, at the time of the rescission, left funds in the hands of defendant, from which he promised to pay the demands of plaintiffs, such promise would have been supported by a new and independent consideration, and the plaintiffs could have maintained an action thereon.

.If such had been the hypothesis of the charge, in reference to this promise, requested by plaintiffs, it should have been given; but framed as it is, it was properly refused. It is an uncontroverted fact, that Wright surrendered his contract August 14th, 1884. The charge bases the validity of the promise, and the liability of the defendant, on the rescission and an indebtedness existing more than a month previously—July 10, 1884. There was evidence tending to show that no indebtedness existed at the time of the surrender of the contract. In order to support a promise to retain the money and pay the demand of plaintiffs, there must have been an indebtedness at the time the contract was rescinded, from which the defendant promised to pay their claim—thus constituting a promise to pay his own debt by paying the debt of Wright. The charge ignored the evidence of a previous payment of the indebtedness existing in July, and also of a breach of the contract before its rescission. It is abstract, and calculated to mislead.

The rulings of the court are in accord with these views.

Affirmed.

STONE, C. J.—I differ from my brothers in this case. As I understand it, the promise was an original one, based on a valuable new consideration, of detriment to the promisee. *Rutledge v. Townsend*, 38 Ala. 706. That promise was not made dependent on Wright's failure to pay. It was a promise that Jones would pay, not a guaranty that Wright would pay. Wright's debt cut no figure in the case, except that it fixed the amount Jones agreed to pay. And the fact that Wright owed a debt of the same amount can make no difference. It is frequently the case, that on a new promise,

supported by a new consideration, a second debtor becomes liable to pay the debt of another, without cancelling the obligation of that other. *Dunbar v. Smith*, 66 Ala. 490, and *Coleman v. Hatcher*, 77 Ala. 217, were cases of that kind. In neither of these cases had the original debt been cancelled. *Young v. Hawkins*, 74 Ala. 370, is another case which asserts the doctrine very fully. In neither of them was the contract so executed as to meet the requirements of the statute of frauds, if they fell within its influence. Yet, the contract in each case was held valid. As I understand the principle, it is as follows: Wherever the promise is to pay absolutely, not as surety of another, nor as guarantor that another will pay, and the promise is supported by a valuable consideration moving from the promisee, or to the promisor, this is not within the statute of frauds, because it is not a promise to pay the debt of another. The fact that such payment incidentally discharges a debt for which another is bound, can not vary the nature of the contract, or convert the original, absolute promise into one of mere suretyship.—Browne Stat. Frauds, (4th Ed.) § 212; *Nelson v. Boynton*, 3 Metc. (Mass.) 396.