# Aultman & Co. v. Fletcher.

*Action of Assumpsit*

1. *General charge for defendant should not be given when the evidence tends to support any aspect of plaintiff's case.*—If there is any aspect of a case in which the plaintiff is entitled to recover, and there is any evidence tending to support it, which the jury may believe, the giving of the general charge for the defendant is erroneous.

2. *Statute of frauds.*—A party may make a valid oral contract, which operates to create a debt of his own, if founded on a new consideration, though the effect of the payment thereof is to pay the debt of another ; but to relieve the agreement from the influence of the statute of frauds, the essence of the new understanding must be the payment of the promisor's own debt, by paying the debt of another.

3. *Same; case at bar.*—An agreement by defendant, assented to by W., that, if plaintiff would sell a saw mill to W., defendant would pay to plaintiff whatever should be coming to W. for sawing timber thereafter to be done by W. for defendant,—it being stipulated in the sale that W. should be credited with "whatever would be coming to him,"—is not an agreement to pay the debt of another, but an agreement to pay one's own debt in a particular manner, and is not within the statute of frauds.

4. *Same.*—Where plaintiff sold a saw mill to W., and as part of the

inducement thereto, the defendant with W.'s consent promised to pay plaintiff whatever should be coming to W. for sawing timber thereafter to be done by W. for defendant, it being stipulated that W. should be credited on the purchase price for whatever should be coming to him from defendant for such sawing, the reduction of the debt W. owed plaintiff did not depend upon the actual payment by defendant to the plaintiff of the amount, but upon the performance by W. of his part of the agreement; and as soon as he did the sawing for defendant, W.'s debt to plaintiff became *pro tanto* extinguished, and the obligation of defendant to plaintiff, by way of novation, to that extent substituted in its stead, and the transaction is not within the statute of frauds.

5. *Vendor reserving title on conditional sale, can not reclaim property and also sue for price.*—When the title to property is reserved in the vendor under a conditional sale, by the terms of which it is so to remain until payment of the purchase price, the vendor can not reclaim the property, and in the absence of an agreement, still maintain assumpsit for the price.

6. *Effect of vendor's retaking property conditionally sold, as impairing agreement of third party to pay part of purchase price.*—Where plaintiff sold a saw mill to W., and as a part of the trade defendant promised to give his sawing to W. and to pay to plaintiff whatever might be coming therefor to W., and after such sawing was done, plaintiff took the property back at a valuation less than the purchase price, and under an agreement that the retaking should not discharge the remainder of the debt, such retaking and agreement in no wise impaired defendant's obligation to pay his debt which he owed plaintiff for the sawing done by W.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellants, C. Aultman & Company, a corporation, against the appellee, R. M. Fletcher. The defendant pleaded the general issue and the statute of frauds.

The uncontroverted evidence showed the following facts: That in the fall of 1882 plaintiffs' agent was approached by one J. G. Williams to sell him, Williams a saw mill and engine; that plaintiffs' agent refused to do so at first, but afterwards went to Madison, at Williams' request, and there had a conversation with Williams and defendant in regard to the purchase of said engine and mill; Williams offered to give plaintiffs as security a mortgage on another mill, and the defendant said that he had a good deal of timber he wanted sawed up, and that he would be able to give Williams about $500 worth

of sawing, and that if Jones (plaintiffs' agent) would let Williams have the mill and engine, he (defendant) would give Williams a large amount of timber to saw, and would pay to plaintiffs whatever amount would be coming to Williams for the sawing. Williams assented to this, and Jones agreed to let him have the mill and engine in consideration of two thousand dollars, which was to be secured by a mortgage on the engine and mill and another engine. Plaintiffs also took four notes from Williams, each for $500, by which title to the engine and saw-mill was retained in plaintiffs until they were paid for. It was the distinct understanding that Williams should be credited on his debt to plaintiffs with whatever amount would be coming to him for the sawing he should do for Fletcher. Plaintiffs refused to sell said Williams the machinery until Fletcher promised to give the sawing to Williams, and pay the price for the sawing to C. Aultman & Co., and that it was in consideration of this promise and agreement of appellee that plaintiffs finally let Williams have the mill and engine, which was put up on Fletcher's land and did a large amount of sawing for him. After the sawing was done, there was a dispute between Fletcher and Williams as to how much was due for it; and Fletcher on several occasions admitted that he was to pay to plaintiffs whatever amount was due, and on one occasion offered to pay $200, which offer was declined. Fletcher never denied at any time, either before or after the sawing was done, that he was to pay C. Aultman & Co. the amount which he was owing Williams for sawing the timber; but the only controversy between the parties was as to what amount was actually due. Fletcher filed a paper in this case, which was sworn to, in which he admitted that he owed the sum of $325, with interest from December 15th, 1883, for the sawing done by Williams, and stated that he did not know whether to pay said sum to C. Aultman & Co. or to Wise, Hertzler & Co., to whom the accounts of Williams had been transferred. After Williams failed to pay for said engine and saw-mill and the other engine, on which plaintiffs took a mortgage, plaintiffs took the engine and mill back at a valuation of $1,350 or $1,500, which was credited on the notes.

The defendant introduced no testimony on the trial of the cause. After the introduction of the plaintiffs' evi-

dence, the court, at the request of the defendant, gave the general affirmative charge in his behalf. There was judgment for the defendant, and the plaintiffs appeal, and assign as error the giving of the general affirmative charge in favor of the defendant.

HUMES, SHEFFEY & SPEAKE, T. BETTS and W. L. CLAY, for appellants.—Fletcher's promise and agreement to pay appellants what he would owe Williams on a settlement for the sawing was not void under the statute of frauds, because it was not within the meaning of the statute a promise to answer for the "debt, default or miscarriage of another," but was a promise by Fletcher to pay a debt he owed Williams in a certain way, i. e., by paying appellants part of the debt Williams owed them. Fletcher was paying his own debt and incidentally paid Williams' debt *pro tanto.*—Browne on Statute of Frauds, (3d ed.), §§ 166, 214a, 214b, 214c; *Hitchcock v. Lukens,* 8 Porter 333; *Woodruff v. Scaife,* 83 Ala. 152; *Thornton v. Williams,* 71 Ala. 555; *Dunbar v. Smith,* 66 Ala. 490.

The defendant's promise is not to pay the debt, but merely to deliver certain property to the nominee of the original debtor; and the right of action of such nominee against the defendant for a breach of his promise is not at all affected by the statute of frauds. And though the form of the defendant's engagement be to pay, if he should receive funds of the debtor to the amount of the debt, still it is clear the statute does not apply, as the debtor's own funds are in effect relied on for payment. Browne on Statute of Frauds, (3d ed.), § 187; *Hitchcock v. Lukens,* 8 Port. 338; *Burkham v. Mastin,* 54 Ala. 122; *Wright v. State,* 79 Ala 263.

If there was a consideration for Fletcher's promise, appellant was not a stranger to the consideration. The consideration for his promise was that he was to get his timber sawed. Here was a direct advantage and benefit to be derived by Fletcher by the sale of the mill to Williams; and here also was a detriment and disadvantage to Aultman & Co., because they parted with the possession of their engine and saw-mill at Fletcher's request and because they had refused to part with their property until Fletcher made this promise. Credit was given by Aultman & Co. all through the transaction to

[Aultman & Co. v. Fletcher.]

Fletcher and Williams jointly; they looking to Fletcher for the price of the sawing to be done by Williams, estimated to be about $500 worth, and to their notes against Williams and lien on the property for the balance of the purchase price. Credit having been given to both joint-ly, as neither of them can be said to be surety for the other to the creditor, their engagement need not be in writing.—Browne on Statute of Frauds, 191, § 197; *Wainwright v. Straw*, 15 Vt. 215; *Gibbs v. Blanchard*, 15 Mich. 292; *Swift v. Pierce*, 13 Allen (Mass.) 136; *Prout v. Webb*, 87 Ala. 593; *Wright v. State*, 79 Ala. 265; *Dunbar v. Smith*, 66 Ala. 492.

Whether there was any consideration moving from the appellants to Fletcher or not, there was certainly a consideration for the promise as between Fletcher and Williams.—*Coleman v. Hatcher*, 77 Ala 221. In this case, the price for the sawing was not to be paid to the party doing the sawing, but to a third person; and it does not matter that the consideration moved from Williams and the promise was made to Aultman.—*Dunbar v. Smith*, 66 Ala. 492; *Burkham v. Mastin*, 54 Ala. 126. There is nothing in the contention that the retention of title to the saw-mill and engine, in the vendors, and their afterwards taking the mill back, prevents them from suing *ex contractu* for the balance of the purchase price based on *Shines v. Steiner*, 76 Ala. 458. That case proceeds on the equitable and just provision of the law which does not allow a creditor to obtain payment of his debt twice; but it does not say and was never intended to hold that he may not be paid part of his debt in one way and part in another.—*Burkham v. Mastin*, 54 Ala. 126; *Trustees v. Walden*, 15 Ala. 655.

The court will not allow the statute of frauds to be used as an instrument of fraud, if it can prevent it; and that would be the direct effect of the court's holding that Aultman & Co. are not to be paid the balance due them; and that Fletcher is to be allowed to induce Aultman & Co. to sell their machinery and to have his timber sawed with it, and then, after his timber is sawed, refuse to pay for it.—*Bork v. Martin*, 28 Amer. St. Rep. 572; *Emerson v. Slater*, 22 How. (U. S.) 28; Browne on Stat. of Frauds, (3d ed.), § 212.

WILLIAM RICHARDSON, *contra*.—The promise of the de-

fendant was made to A. H. Jones, the agent of the plaintiffs, that he, Fletcher, had a good deal of timber he wished sawed up, and that he would be able to give Williams about five hundred dollars worth of sawing, and that if Jones would let Williams have the mill and engine that he, Fletcher, would give Williams a large amount of timber to saw and would pay to Aultman & Co. whatever amount would be coming to Williams for the sawing he did for him.—*Clark v. Jones,* 85 Ala. 127; *Westmorland v. Porter,* 75 Ala. 452.

Williams executed four notes of $500 each to the plaintiffs. The notes for $500 each were given by Williams for the machinery, which was bought by plaintiffs and they represent and stand for the account or claim sued on in this case.—*Lehman v. Levy,* 69 Ala. 51; *Thornton v. Guice,* 73 Ala. 321; *Perrine v. Leachman,* 10 Ala. 140; *Oliver v. Hire,* 14 Ala. 590; *Blount v. Hawkins,* 19 Ala. 100; *Martin v. Black,* 20 Ala. 309; *Wynne v. Walthall,* 37 Ala. 32; *Rutledge v. Townsend,* 38 Ala. 706. The promise was made to plaintiffs' agent.—*Blunt v. Boyd,* 3 Barb. (N. Y.) 209; *Farley v. Cleveland,* 4 Cow. (N. Y.) 432; Throop on Verbal Agreements, §§ 403, 408.

HEAD, J.—The action of the circuit court, in giving the affirmative charge for the defendant, is sought to be maintained here, upon the ground that the statute of frauds constituted a bar to the action. A review of this ruling will necessitate a consideration of the various phases of the evidence, and the application of the proper principles of law thereto; and if it be ascertained, that there was any aspect of the case in which the plaintiff was entitled to recover, if the jury believed the evidence tending to support it, then it will follow that the court erred in giving the general charge for the defendant.

The debt of Williams, which it is supposed the defendant promised to pay, was for $2,000, the purchase price of the machinery, and was evidenced by four notes. It appears, however, from the undisputed testimony that the defendant did not, directly or indirectly, promise to pay those notes, or the debt for which they were taken, or any part thereof. His agreement, made with the full consent and concurrence of Williams, the vendee, was to pay

the plaintiff whatever indebtedness of his *own* should accrue, on account of the sawing of timber, which it was contemplated Williams should do for the defendant, and which he afterwards actually did for him. This was, in no sense, a promise to answer for the debt of another, but simply a promise by the defendant, to pay his own debt in a particular way. To such a case, the statute of frauds has no application.—*Woodruff v. Scaife*, 83 Ala. 152. "The statute of frauds was not enacted to prohibit persons against the payment of their own debts, but the debts of others."—*Files v. McLeod*, 14 Ala. 611. It is true that no action could have been maintained, upon the promise of the defendant, until Williams carried out his agreement to do the sawing; yet when that was done, the defendant's promise became capable of legal enforcement, at the suit of the plaintiff. It having been a part and parcel of the contract by which Williams did the sawing, that the compensation therefor should be paid, not to him from whom the consideration moved, but to the plaintiff, there was a present moving consideration of value which took the case without the influence of the statute of frauds.—*Coleman v. Hatcher*, 77 Ala. 221.

There was another provision of the tri—lateral agreement, made at the time of the sale of the machinery, which must not be overlooked. The witness, Jones, who represented the plaintiff in the transaction, testified that the sale was made "with the distinct understanding that Williams should be credited on said debt with whatever sum would be coming to him for the sawing he should do for Fletcher." It will be observed that it is not stated that Williams should be credited with what Fletcher should actually pay the plaintiffs, but with "whatever would be coming to him for the sawing he should do;" the words, "whatever would be coming to him," meaning simply the amount that would be due. Under this stipulation, the reduction of the debt Williams owed the plaintiff, to the extent of the sawing he did for the defendant, would not depend upon the actual payment by the defendant to the plaintiff of the amount; but, upon the performance by Williams of his part of the agreement, and so soon as he did the sawing for Fletcher, his debt became *pro tanto* extinguished, and the obligation of Fletcher to the plaintiff, by way of novation, to that extent, substituted in its stead. "None of the courts

[Aultman & Co. v. Fletcher.]

raise any controversy about these cases, where the original debtor is discharged and the debt released, and a new debt and debtor substituted in their stead by a contract in the nature of novation. This class of cases is universally excepted from the influence of the statute of frauds.''—*Westmoreland v. Porter*, 75 Ala. 452.

A careful examination of the facts and the points actually decided in *Clark v. Jones*, 85 Ala. 127, will disclose that there is nothing therein in conflict with the views we have above expressed. In that very case, CLOPTON, J., says: "A party may make a valid oral contract, which operates to create a new debt of his own, if founded on a new consideration, though the effect of the payment is to pay another debt. In order, however, to have this effect, the essence of the new undertaking must be the payment of the promisor's own debt by paying the debt of another." We are clearly of the opinion that the statute of frauds constituted no defense, and that the circuit court erred in giving the affirmative charge for the defendant. If the jury believed the evidence, the plaintiffs, and not the defendant, were entitled to a verdict.

It appears from the testimony of Clay, that by agreement with Williams the plaintiffs retook the machinery, at a certain valuation, and credited the stipulated amount upon his debt. Counsel for appellee does not rely, in his brief, upon this fact, to justify the ruling of the lower court. Inasmuch, however, as the cause must be remanded for another trial, we deem it not inappropriate to say that such retaking of the machinery interposes no obstacle to a recovery by the plaintiff in this action. It is undoubtedly the law that, when title to property is reserved by a vendor, and a conditional sale thus made, the vendor may not reclaim the property, and, in the absence of an agreement, still maintain assumpsit for the price.—*Shines v. Steiner*, 76 Ala. 458. It is, however, perfectly competent for the parties to agree, as they did in this case, that the retaking shall not wholly discharge the debt. This agreement would be binding upon Williams, the vendee, and *a fortiori*, could in no wise impair the obligation of the defendant to pay his debt, which he owed the plaintiffs, for the sawing done by Williams.

Reversed and remanded.